HENRY ERBEN, Respondent,

*v.*

PETER LORILLARD, Appellant.

Where a person, not a real estate broker, is employed to negotiate the purchase
of real estate, he will be entitled for his services to such a sum as they may be
reasonably worth, which may be more or less than the usual per cent paid to
brokers for like services.

Where the purchaser promised to lease, to the party negotiating the purchase,
the premises for twenty-one years, at eight per cent per year on the purchase price,
*held*, that the agreement being by parol, and void under the statute of frauds, could·
not be set up to furnish a rule of damages in an action brought to recover for
services in negotiating the purchase.

*Appeal from General Term.*

THIS appeal is from the judgment of the General Term
of the Supreme Court, first district, affirming a judgment
entered upon a verdict at the circuit in favor of the
plaintiff.

The complaint alleges that the plaintiff, at the request
of the defendant, negotiated for the purchase of a tract
of land at the corner of Canal and Centre streets, in the
city of New York, and by reason of the plaintiff's labor
and exertions, the price of the owner was reduced from
seventy-five thousand ($75,000) dollars to fifty-five thou-
sand ($55,000) dollars, at which latter price the defendant
purchased; and the plaintiff claims five thousand ($5,000)
dollars as his proper remuneration.

The defendant admits his purchase of the land at the
price named, and denies all the other allegations of
the complaint. The defendant also alleges that the plain-
tiff voluntarily interfered in the negotiation, without any
employment on the part of the defendant.

At the trial, it appeared from the evidence on the part
of the plaintiff, that the defendant employed him to
assist in negotiating the purchase of the land, and agreed
to execute and deliver to him for his services, in case the

defendant became the purchaser, a lease of the premises for twenty-one years, at an annual rent of eight per cent on the amount of the purchase price. The defendant, after the purchase, was requested by the plaintiff to execute such a lease, but he refused, and delivered a lease to another party.

These facts must be held to have been established by the verdict, although the defendant gave evidence showing that he did not employ the plaintiff, and made no agreement with him to execute a lease.

Several witnesses testified that the services of the plaintiff were worth five thousand ($5,000) dollars, but on a cross-examination it appeared that their estimate of the value was connected with the agreement to execute a lease, or with the evidence given on the part of the plaintiff tending to show that the premises were worth from sixty thousand ($60,000) dollars to seventy-five thousand ($75,000) dollars, and that the negotiations of the plaintiff had reduced the price to fifty-five thousand ($55,000) dollars, for which sum the defendant had purchased.

The evidence on these subjects was admitted against objections, and exceptions taken by counsel for the defendant.

A lease of the premises for twenty-one years, at an average annual rent of six thousand ($6,000) dollars, from Mr. Lorillard to the New Haven Railroad Company, executed shortly after the land was conveyed to him, was also received in evidence against the objection of the defendant. Under the like exceptions, the plaintiff was permitted to prove the subsequent occupation of the premises as a railroad depot, and afterward as a hotel for several years.

The defendant moved to dismiss the complaint at the close of the plaintiff's evidence, for the want of competent proof of the value of the services.

The defendant then proved the customary compensation for selling property by brokers to be at one per cent on

the price at which it is sold, and that the seller pays the brokerage.

The plaintiff was not a broker, and disclaimed acting as such, when the defendant employed him.

The judge charged that the jury were not confined in their estimate of the value of the plaintiff's services to the customary compensation of one per cent to brokers; and that if the plaintiff possessed peculiar facilities in managing this business, and had opportunities for obtaining advantages for the defendant, which real estate brokers did not generally possess, and actually obtained these advantages for the defendant, that the jury would give the plaintiff such compensation as they thought his services were worth.

The counsel for the defendant requested the judge to charge the jury:

1st. That in no case can Mr. Erben be entitled to receive more than services of the kind alleged by him are usually worth.

2d. That the only proper proof of such value is the evidence of persons familiar with such services, and with the price usually paid for them.

3d. That in considering the question of the value of the services, the jury must treat the case as if there was no evidence about an agreement for a lease or a breach of it. The judge refused to charge in conformity with these requests, except as he had already charged.

The defendant excepted to the foregoing part of the charge, and also to the refusal to charge as requested.

There were other exceptions taken during the progress of the trial, but none others have been urged upon our consideration for review.

The jury found for the plaintiff two thousand three hundred dollars and interest.

The case has been before this court upon a former trial, when judgment on a larger verdict for the plaintiff was reversed, principally upon the ground that evidence

was admitted of the value of such a lease as the defendant agreed to give as the measure of plaintiff's damages.

*John E. Parsons* for appellant.

*John W. Edmonds* for respondent.

LEONARD, J. The whole of the original agreement between the parties was competent as evidence for the plaintiff, although it necessarily included that part which related to the lease.

It was a part of the same conversation, occurring at the time the defendant employed the plaintiff to negotiate for him in the purchase of the land. The proof of an agreement to give a lease was a part of the *res gestæ* to establish the retainer, and not to form the rule of damages.

The nature of the plaintiff's claim is an admission that he has no claim to any pecuniary compensation for his services, if the agreement with the defendant had been performed on his part. When the defendant invited the aid of the plaintiff in his negotiations, he told the defendant he was not a broker; and that he did not expect a broker's commission, may be fairly inferred. Another and wholly different mode of compensation was agreed on. It was necessary to show what the consideration or advantage for his services was to have been by the agreement, before it could be ascertained by the court that the plaintiff should be permitted to demand any other mode of reward. If the agreement to give a lease had been valid, the plaintiff could have claimed its value as his rate of damages.

That portion of the agreement by which the defendant promised to give a lease for twenty-one years, was void by the statute; but it was not until the nature of the contract in this respect was in evidence that the court could declare the proper rule in relation to the damages which the plaintiff was entitled to recover.

The rule was laid down by this court, when the case was here on appeal after a former trial and verdict for the

plaintiff, that the plaintiff was not authorized to give evidence as to the value of the lease for twenty-one years which the defendant had promised to execute, but was entitled to recover only the sum which his services were worth, and this rule we now reaffirm.

The question in this case, both in respect to the admission of evidence and the charge, refers to the mode of ascertaining the value of the plaintiff's services; it being insisted by the defendant, and conceded by the plaintiff, that the agreement for the lease, which was to have been the consideration for those services, was wholly void.

The property which the defendant sought to purchase was of considerable dimensions, in a compact part of the city, capable of adaptation, from its size and situation, to various kinds of public or private use.

The plaintiff was an organ manufacturer, and not a real estate broker. He owned other property in the immediate vicinity, and he had offered to the owner to take a lease from them, or any purchaser, at an annual rent of eight per cent upon its value, or upon the price paid by the purchaser.

These facts were known to the defendant. He had applied to the owners to become the purchaser, and the price named to him was seventy-five thousand ($75,000) dollars, and he had been told that Mr. Erben would take a lease for twenty-one years at eight per cent on that price.

This statement was made to him in reply to his objection that the price was too large, and he was compelled to admit its force. He could not in opposition to that fact expect any reduction from the price while Mr. Erben was willing to pay such a rent. He then called on Mr. Erben, ascertained from him, personally, that he would take such a lease; stated to Mr. Erben that the price demanded was too large, to which he assented, and expressed the opinion that it could be had for less. Both were interested in obtaining the land at the smallest price, as the rent was expected to be fixed at a certain percentage on the price

to be paid. It was the opinion of both that Mr. Erben, from his social and friendly relation to the officers of the gas company, who were the owners of the land, possessed advantage for negotiations to purchase the premises superior to any other person.

Mr. Lorillard then authorized Mr. Erben to negotiate the purchase for him at the price of sixty thousand ($60,000) dollars. Mr. Erben, after considerable time spent in the negotiation, obtained the consent of the owners to sell at that price.

Mr. Lorillard then refused to take the land, as so much time had elapsed since the negotiation had commenced, and he had made other use of his money.

The plaintiff had not been notified to terminate negotiations, although nearly two months had elapsed. He was again authorized to continue negotiations on a new footing; the defendant to pay fifty-five thousand ($55,000) dollars, to be secured by a mortgage on the premises, payable in one year.

After some further negotiation the purchase was effected substantially on these terms. The plaintiff was occupied in carrying on the negotiation over three months.

The defendant soon afterward leased the premises at a rate equal to eight per cent per annum for a term of twenty-one years on the highest sum demanded by the owner as the price of the land (or on $75,000). All these facts were proven, or are conclusions directly deducible from the proven facts. Without any reference to the agreement for a lease, they establish that neither the plaintiff nor the defendant expected to receive or pay the customary brokerage on the sale of real estate.

The facts stated are all necessary and competent elements in ascertaining the benefit or advantage obtained by the defendant through the aid of the plaintiff's services, and their fair and reasonable worth.

Where a broker has been employed, and no rate or special mode of compensation has been agreed on, the

customary rate forms the proper rule of value for his services. But that rule is not necessarily applicable in an exceptional case like the present.

The reasonable worth may be less or more than the usual brokerage in any exceptional case.

The judge committed no error in admitting testimony showing the whole agreement between the parties, including the conversation relating to a lease, and also the evidence of the value of the land, the rate at which it was subsequently rented, and also in refusing to charge that the plaintiff was entitled only to the customary brokerage, and that, in effect, they must exclude all evidence concerning the lease in considering the value of the plaintiff's services.

The agreement to give a lease is one fact tending to preclude the application of the usual or customary rate for the compensation of real estate brokers; and the judge afterward correctly limited the effect of this evidence by directing the jury not to consider any supposed benefit to the plaintiff of a lease, nor any rise in the value of the property.

There was evidence admitted of the value of the plaintiff's services, according to the opinion of several witnesses, who appear, on cross-examination, to have no acquaintance with services of the description of those rendered.

The facts were all before the jury, and they were as competent to fix the value of the plaintiff's services as the witnesses who gave their opinions.

As it was not shown that these witnesses possessed any superior capacity for estimating the value of the plaintiff's services, the admission of their evidence as to the value of the services was clearly erroneous.

This error is fatal to the verdict, and there should, for this reason, be a new trial.

It was also erroneous to permit evidence as to the subsequent use of the premises, or the price at which they

were sold after the lapse of some time, although I do not perceive that any of the evidence on this subject affected the result.

The value of the property at the time of the sale was proper to be shown, with a view to the value of the services.

There must be a reversal of the judgment, and a new trial, with costs to abide the event.

All concur in reversal, but upon several distinct grounds.

Judgment reversed.