(164 App. Div. 689)

### KING v. BROADHURST.    (No. 6128.)

(Supreme Court, Appellate Division, First Department.    December 4, 1914.)

1. CONTRACTS (§ 237*)—ACTIONS—PERFORMANCE—RECOVERY.

Defendant, a playwright, delivered to plaintiff, an actor, a new play, agreeing that, if he induced a manager to produce it, plaintiff should have the leading part. Plaintiff interested a manager in the play, but the manager objected to plaintiff taking the leading role. Defendant requested plaintiff to waive his rights, which plaintiff refused to do until defendant agreed to do what was right in the matter. *Held,* that plaintiff, having discharged his part of the contract, could recover the reasonable value of his services in interesting the manager, who thereupon took the play; the waiver of his rights being a sufficient consideration to support defendant's promise to pay for services already performed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1119–1122; Dec. Dig. § 237.*]

2. CONTRACTS (§ 305*)—PERFORMANCE—SUFFICIENCY.

As defendant requested plaintiff to allow him to conclude the negotiations, he cannot defeat plaintiff's recovery on the ground that plaintiff did not conclude them.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1400, 1463, 1464, 1467–1475; Dec. Dig. § 305.*]

Appeal from Trial Term, New York County.

Action by William Harcourt King against George H. Broadhurst. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John H. Hazelton, of New York City, for appellant.
Nathan Vidaver, of New York City, for respondent.

LAUGHLIN, J. At the close of the evidence offered by the plaintiff with respect to the contract upon which he predicates his action, but before the close of his evidence relating to damages, the court dismissed the complaint, and announced that the ground upon which it was dismissed was that the plaintiff had failed to show an enforceable contract. Before the complaint was dismissed the plaintiff presented some evidence tending to show a basis for the award of damages, provided he established a contract liability, and from the rulings of the court with respect to the evidence bearing on the question of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages it is evident that the court considered that plaintiff had established a prima facie case for the jury on the question of damages, and, if not, that he could have sufficiently supplemented the evidence on that point, if it would have been of any avail to him. The only question, therefore, presented by the appeal, is whether the plaintiff proved a contract sufficiently definite to entitle him to recover.

The plaintiff and the defendant, who had been acquainted for a number of years, had an interview at the Lambs' Club in the city of New York about the middle of September, 1906, and upon that interview and a subsequent conversation between them over the telephone this action principally depends. The plaintiff had been an actor for 22 years, and had successfully played in many important roles; and the defendant had long been a playwright, and several of his productions had met with success. The testimony of the plaintiff stands uncontroverted, and must be accepted on this review. He says: That the defendant came to him on the occasion in question and related an interesting story, which pleased him and he advised that it be dramatized. That defendant said that it had been dramatized. That he then said he would like to read it, and would "like to get hold of it. I think I could place it for you." That defendant asked him why he thought so, and he replied: "I have no doubt of it, by reason of the knowledge I have of certain managers' requirements, and I should be very glad to take it up and see if I could not locate it for you." That defendant asked: "Have you ever done anything of this sort?" To which he replied: "Yes; I have just recently placed a play for production at the Madison Square Theater." That after further negotiations at the same interview, defendant gave him a letter to a representative of a theatrical manager, who had the manuscript to read, directing that the manuscript be delivered to him, and plaintiff expressed confidence in his ability to place the play with one of several managers of Broadway theaters, and the defendant agreed that if he was able to place the play he should have the leading part, for which the defendant considered that he was well qualified. That plaintiff thereupon obtained the manuscript and presented it to one Grismer, who was associated with W. A. Brady in the production of various plays, and induced Grismer to read it and to agree that, if Brady approved of it, he would join Brady in taking and presenting the play with the plaintiff in the leading role, and gave him a letter to Brady, in substance to that effect. That he called upon Brady and presented Grismer's letter and the manuscript of the play, and persuaded Brady, for whom he had acted and for whom he had read and criticized plays, to read the manuscript. That Brady liked the play, but expressed the opinion that plaintiff was too old for the leading part. That plaintiff thereupon informed Brady that he had the placing of the play with a manager who would accept him in the leading role, and manifested an intention of endeavoring to place the play with another manager, whereupon Brady suggested that he would like an interview with the defendant, and at Brady's suggestion he sent the defendant to have an interview with Brady, and it was agreed that defendant, after such interview, would telephone plaintiff. That

after the interview with Brady the defendant called plaintiff on the telephone and stated, in substance, that Brady was anxious to present the play, but desired a younger man in the leading part, and that he was unable to persuade Brady to accept the plaintiff therein, whereupon plaintiff replied: "That leaves no option, George. I hate to lose so much time, but I will go down and get the manuscript, and I will give it into another manager's hands to-night or to-morrow morning." That defendant then said: "Hold on, Billy; I can't see that. This is a great chance for me, and I cannot afford to let it slip." To which he replied: "I see that, too, George; but there are other men." That defendant then said: "I can't afford to let it slip." And he replied: "George, you won't let it slip. Mr. Brady is the man I have taken it to, but he is not the only manager. I can go to some one else right away, and I will." To which defendant answered: "Hold on, Billy; you do not want to stand in the way of my production?" And he replied: "No; I shan't stand in the way of your production, George. I told you I will go to another manager." Whereupon defendant said: "Now, let us look at this as a matter of business. Won't you stand aside and let me close this matter up to-night or to-morrow, if I can, and I will see you at the club, and I will fix the thing right with you?" To which he answered: "George, I can't see standing aside and giving up this magnificent opportunity. These parts are not written every day or every year, and I have not played this season. I haven't any contract for this season, and this means a big chance for me, and fair is fair." That defendant replied: "Billy, fair is fair; but consider my position in the matter, and let me handle this in a businesslike way. Now you know me, Billy, and you know I will see you at the club, and I will do what is right." That he then said: "George, let me think this over a minute, I can't make up my mind in a minute." And defendant answered: "It is a matter of business. Now, look at it in that way, and let me go ahead, and I think I can close the matter up to-night or to-morrow morning, and I will meet you at the club, and we will fix things right." And he replied: "If you feel that way about it, George, I suppose you want me to stand aside and let you go ahead? All right, and I will meet you at the club." Thereupon the defendant negotiated a contract with Brady for the production of the play on a basis of royalties to him as author. The negotiations were reduced to writing under date of September 26, 1906, and the play was subsequently presented by Brady under that agreement, and the defendant has received royalties thereunder aggregating $138,879.22. The contract for the presentation of the play remained in force and the play was still in demand when this action was brought.

The evidence further shows that the plaintiff met the defendant at the club about two days after the conversation over the telephone, and there and elsewhere several times thereafter, and endeavored to open a discussion concerning the defendant's liability to him in the premises, but that the defendant always avoided it; that after the holidays plaintiff went on a theatrical tour, and did not return to New York until the summer of 1908, and that he called at the defendant's office in Septem-

ber of that year, but, not being able to find him, wrote him on the 18th of the same month, stating that he had been expecting to hear from him with reference to this matter, and that he considered that he "was as much entitled to the fees for placing the play as any other agent acting in the case would have been." Three days later the defendant replied to the letter, denying that plaintiff acted as his agent, and asserting that he knew all the managers, and that it was unnecessary for him to employ an agent, and that he only permitted the plaintiff as a favor to take the manuscript to aid plaintiff in obtaining the leading role. There is, however, nothing in the evidence as the case is now presented to sustain any of these assertions. The plaintiff again wrote the defendant on October 1, 1907, setting forth more fully his claim, and suggesting that the defendant consent to have the matter arbitrated. Grismer corroborated the plaintiff with respect to their interview, and other evidence was offered tending to show that the customary brokerage fee for placing a play, and collecting royalties, and looking after the interests of the author, was 10 per cent. of the royalties collected; but often the amount of the commission was fixed at a different rate by special agreement.

[1, 2] The original agreement, as shown by the testimony of plaintiff, did not contemplate the payment of any commissions by defendant for the services to be rendered by plaintiff in placing the play; but the plaintiff was, nevertheless, to be compensated for his services, by being employed to perform the leading part in the play. If, after the plaintiff had devoted time and energy in an endeavor to place the play according to the original agreement, the defendant had, without his consent, refused to be bound by the original agreement, and had placed the play in disregard thereof, there can be no doubt but that the plaintiff would have had a cause of action against him, if not for the value of the contract to perform the leading part on account of inability to show that he could have so placed the play, then at least to recover on a quantum meruit for the services rendered. The plaintiff had the right which he asserted, under the original agreement, to place the play with a manager who would accept him in the title role; and unless he waived that right, or the defendant violated the contract, the play could not have been placed with Brady without an agreement by him to accept plaintiff in the leading part. Brady was a prominent and successful theatrical manager, and he liked the play and was desirous of presenting it; but he would not present it with the plaintiff in the title role, and thereupon the defendant, being anxious to have his play produced by Brady, persuaded the plaintiff to waive his right to take the leading part, *not as a favor,* but on the express representation, repeated, that it was *a matter of business,* and that he would see the plaintiff, and "fix the thing right," and "do what is right." The waiver of plaintiff's right to place the play with a manager who would accept him as an actor in the role he desired was a sufficient consideration for a promise on the part of the defendant to pay him for the services rendered in placing the play with Brady.

The contention on the part of the learned counsel for the respondent is that the defendant's promise was too indefinite to be enforced, and

he cites United Press Co. v. New York Press, 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288, in support of his contention. That case, as I view it, is not in point. The court was there deciding with respect to the enforceability of an *executory* contract, and pointed out the distinction between that and an *executed* contract. Here the contract had been fully performed by the plaintiff in so far as it concerned the defendant, and so far as the defendant desired that it should be performed by the plaintiff. It is idle to speculate with respect to whether or not the defendant might have, personally or otherwise, interested Brady in presenting this play without the assistance of the plaintiff, and the fact that plaintiff had never placed a play for commission before, as appears by the evidence, is not material. Brady had never heard of the play until it was presented to him by the plaintiff, and there can be no doubt, on the testimony of the plaintiff and Grismer, that the contract was secured through the energetic manner in which the plaintiff presented the matter to Grismer and Brady.

What, in the circumstances of this case, is the fair construction of the promises which the defendant made to the plaintiff to induce him to waive his right to take the manuscript to other managers, with a view to placing the play according to their original agreement? That is the question presented for decision. It is manifest that, when those promises were made, they were made on the understanding on the part of both parties that the plaintiff was not to be employed by Brady. That being so, and no other employment having been under consideration, and the services having been of a character for the performance of which brokers are frequently employed, and the defendant having elected to accept them and to adjust the matter with plaintiff by fixing things right, or doing what was right, it is a reasonable inference, I think, that the defendant intended, and the plaintiff understood, that fair and reasonable compensation was to be made for services rendered. The rule appears to be well settled that where services are rendered under an express agreement regulating the compensation therefor, which is void, a recovery may be had on a quantum meruit. Galvin v. Prentice, 45 N. Y. 162, 6 Am. Rep. 58; Price v. Press Pub. Co., 117 App. Div. 854, 103 N. Y. Supp. 296. See, also, Thacher v. N. Y. W. & B. R. R. Co., 76 Misc. Rep. 60, 136 N. Y. Supp. 342. And it has also been held that where one *not a real estate broker* assists in the negotiations for the purchase of lands by another on a parol agreement that he is to be compensated for his services by a lease of the lands, which is void for not being in writing, and there was no agreement that he was to be compensated for his services otherwise than by the lease, he is entitled to recover the reasonable value of his services, which is not to be determined by the value of the lease, since the agreement therefor was void. Erben v. Lorillard, 19 N. Y. 299; s. c., second appeal, *41 N. Y. 567.

Of course, the theory of those cases is that the parties are presumed to have known the law, and that their position is the same, in legal effect, as if the services had been rendered at the request of the defendant, but without an express agreement with respect to the compensation; but that does not render the principle inapplicable to the

case at bar, for here by the new agreement the defendant accepted the services as rendered, which had been rendered at his request, but without any express agreement that he was to compensate the plaintiff therefor. The opinion delivered in the Court of Appeals on the second appeal of Erben v. Lorillard, supra, does not appear to have been concurred in by the majority of the court, but there was no dissent therefrom, and although the views therein expressed were not deemed by the majority of the court essential to a decision of the appeal, they impressed me as well considered and sound. If the plaintiff had been employed as a broker, the defendant could not have escaped liability on the theory that the plaintiff did not actually negotiate the terms of the contract, inasmuch as his failure to secure it was owing to the fact that the defendant took charge of the negotiations and relieved him from further performance. Martin v. Silliman, 53 N. Y. 615.

I am of opinion, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur in the reversal of this judgment, as I think the plaintiff had established a cause of action which would entitle him to recover for the reasonable value of the services rendered by him in presenting the play to Brady, who afterwards made the contract with the defendant and produced the play. Under the original agreement, plaintiff was to have as compensation for the services that he rendered the right to appear as the actor taking the part of the principal character in the play. Plaintiff, however, never produced a manager who would consent to the condition of the plaintiff acting the principal part, and therefore he did not perform his part of the contract. The objection to the plaintiff performing in the play was made by the manager to whom the play was presented, and the evidence is uncontradicted that the defendant did all he could to induce the manager to accept the play upon the conditions upon which it was first presented to him. At the subsequent interview, however, at which the plaintiff was induced to surrender his right to take part in the production of the play, the defendant promised that, if plaintiff would "let me handle this in a businesslike way," he would see the plaintiff at the club and would do what was right; that, if the plaintiff would allow the defendant to go ahead and close up the matter that night or the next morning, the defendant would meet him at the club and they would "fix things right," and that proposition was accepted by the plaintiff. And after that conversation the defendant made a contract with Brady under which the play was produced.

There was no question of a broker, nor were the services rendered those rendered by brokers in procuring a manager for a playwright; and I do not think the compensation that such brokers are entitled to under the custom in New York is competent evidence to determine the plaintiff's services. Nor do I think the amount received by the defendant as royalties from the play is competent evidence. What the plaintiff was entitled to was to have the play produced with himself

playing the principal part. To that condition the manager to whom he submitted the play refused to comply, and then the defendant promised that he would do what was right, and would fix things right if plaintiff released him from the arrangement that they had made, and to that the plaintiff agreed. I think the value of those services must be determined from the conditions that existed at the time the promise was made. Of course, it would be impossible to prove what benefit the plaintiff would have derived from the opportunity to play the principal part, and it is difficult to suggest any measure of damages which would be the reasonable value of the services rendered by the plaintiff for the defendant up to the time of this substituted agreement. But the subsequent success of the play, or the royalties received, had no relation to the value of those services. The amount that the plaintiff is entitled to receive must ·be determined by the jury from the circumstances existing at the time the agreement was made for fixing the compensation for the services that had been rendered by the submission of the play to Brady and the resulting introduction of the defendant to Brady which resulted in the production of the play. Whatever plaintiff was entitled to recover he was entitled to recover the day after Brady made the contract with the defendant, and it is the value of the services then rendered, irrespective of the success or failure of the play, for which the plaintiff is entitled to recover.