THE UNITED PRESS, Appellant, *v.* NEW YORK PRESS COMPANY, Limited, Respondent.

1. CONTRACT — INDEFINITENESS OF PRICE TO BE PAID FOR SERVICES. An executory contract in writing, attempting to provide over a period of years for the furnishing of news reports on each day at a price "not exceeding three hundred dollars during each and every week that said news report is received," is so indefinite as to the price to be paid as to preclude a recovery of substantial damages for its breach in refusing to receive the service; and the fact that the sum specified has been paid for a period of time is not an acknowledgment of an obligation to pay that amount during the whole contemplated life of the contract.

2. COSTS — EXTRA ALLOWANCE. Under section 3253 of the Code of Civil Procedure an additional allowance, not exceeding five per centum, to the prevailing party is a part of the costs of the action and may be allowed to the defendant where the plaintiff recovers less than fifty dollars.
    *United Press* v. *N. Y. Press Co.*, 35 App. Div. 444, affirmed.

(Argued October 31, 1900; decided November 16, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 27, 1898, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William C. Davis* for appellant.    Notwithstanding the language of the contract bound the defendant to pay a sum "not exceeding $300 per week," the defendant, by paying that sum for a long period, without objection and with uniform regularity, bound itself by a practical construction of the contract to pay that sum during the life of the contract. (*Kennedy* v. *McKone*, 10 App. Div. 88.)    The action is properly brought.    The right of action for damages accrued immediately upon the breach of the contract by the defendant. (*Todd* v. *Gamble*, 67 Hun, 38; *Windmuller* v. *Pope*, 107 N. Y. 674; *Dingley* v. *Olar*, 11 Fed. Rep. 372.)    The measure of damages is the contract price, less the cost of performance. (*Howard* v. *Daly*, 61 N. Y. 362; *Nichols* v. *S., S. Co.*, 137 N. Y. 471; *B. T. Co.* v. *M. Mfg. Co.*, 12 App. Div. 260; *Heroy* v. *F. de S. Co.*, 16 App. Div. 171; *Everson* v. *Powers*, 87 N. Y. 527.)    Where parties to a contract have themselves given a practical construction to it, the courts will take into account such construction and give effect to it. (*Reading* v. *Gray*, 6 J. & S. 79; *Stokes* v. *Recknagel*, 6 J. & S. 368; *Van Buskirk* v. *Stow*, 42 Barb. 10; *Moses* v. *Bierking*, 31 N. Y. 462; *Hilleary* v. *S. R. H. G. Co.*, 4 Misc. Rep. 127.)    The court erred in directing a verdict. (*Bagley* v. *Bowe*, 105 N. Y. 171.)    The extra allowance granted to the defendant is unauthorized by law. (*Murray* v. *Robinson*, 9 Hun, 137; *Pinder* v. *Stoothoff*, 7 Abb. [N. S.] 433.)

*De Lancey Nicoll* and *John W. Boothby* for respondent. The agreement was so indefinite and uncertain that no action for a breach of it will lie. (*Buckmaster* v. *C. I. Co.*, 5 Daly, 313; *Campbell* v. *Jimenes*, 7 Misc. Rep. 77; *Harper* v. *Hassard*, 113 Mass. 187; *Peacock* v. *Cummings*, 46 Penn. St. 344; *Coffin* v. *Landis*, 46 Penn. St. 426; *Van Slyck* v. *B. Ins. Co.*, 115 Cal. 644; *Gates* v. *Fay*, 53 Mich. 181; *Wardell* v. *Williams*, 62 Mich. 50; *Dayton* v. *Stone*, 69 N. W. Rep. 515.) The plaintiff could in no event recover more than nominal damages. (*Todd* v. *Gamble*, 148 N. Y. 382.) The extra allowance of costs granted to the defendant was authorized by the provisions of the Code of Civil Procedure. (*Brady* v. *Durbrow*, 2 E. D. Smith, 78; *Landon* v. *Van Etten*, 57 Hun, 122; *S. S. G. Co.* v. *J. M. Co.*, 61 Hun, 336.)

GRAY, J. This action was brought to recover damages for the breach of a contract in writing entered into between the parties, wherein the plaintiff agreed to deliver to the defendant the night news report of the former for publication every morning in the city of New York and the defendant agreed to receive the said news report, " and to pay to the first party (the plaintiff) therefor a sum *not exceeding three hundred dollars during each and every week that said news report is received by the second party* (*the defendant*) until the first day of January in the year 1900, it being understood and agreed that said news report continue to be fully equal in quality and quantity to its present average standard." It was, also, further provided that the defendant " shall have the right to receive the said news report without interruption from and after the first day of· January, in the year 1900, and the first party (the plaintiff) shall continue to deliver the same if required by the second party at a price which shall be fair and equitable to both of the parties hereto, provided that such price shall not be more than any other daily morning newspaper in the city of New York shall be required to pay to the first party for the same news report."

This contract was made in July, 1892, and the parties pro-

ceeded under it until January 1st, 1894; the plaintiff furnishing its news report to the defendant and the defendant paying therefor the sum of $300 in each week. A few days before January 1st, 1894, the defendant, through its manager, notified the plaintiff in a letter to cease sending the news report on the first of January, and that after that date it would not pay for the same. The letter, in which this notice was conveyed, contained the statement that it had become necessary to make a reduction in the cost of the defendant's news service and that the plaintiff had declined to make any concessions. In a brief correspondence, which ensued during the next few weeks, the subject of a concession in price was discussed between the parties; but nothing came of it. Thereupon the plaintiff brought this action and demanded judgment for damages in the sum of upwards of $93,000, upon the basis of its right to $300 a week from January 1st, 1894, to January 1st, 1900. The trial court denied a motion to dismiss the complaint; and, at the close of the plaintiff's case, the defendant offering no evidence, a verdict was directed for the plaintiff in the sum of six cents, upon the ground that there was a technical breach of the contract for which only nominal damages might be awarded. The judgment entered thereupon was affirmed by the Appellate Division, in the first department, and the plaintiff's appeal to this court presents this as the main question for our consideration; whether the contract was so indefinite, by reason of its failure to state the price to be paid by the defendant, as to preclude a recovery of substantial damages for its breach. The appellant claims that, inasmuch as the language of the contract bound the defendant to pay a sum " not exceeding $300 a week," by paying that sum for a period of time, it had bound itself through a practical construction of the instrument and it is, also, argued that the contract should be construed as one " to recover the reasonable value of the news service for the unexpired term of the contract, less the cost of performance."

If this were a case where the contract of the parties was merely ambiguous in its terms, it might be permissible to

explain them by evidence of their acts and thus to show a practical construction; but the difficulty with this instrument lies deeper. It lacked support in one of its essential elements; in the absence of a statement of the price to be paid. That was a defect, which was radical in its nature and which was beyond the reach of oral evidence to supply; for, if the intention of the parties, in so essential a particular, cannot be ascertained from the instrument, neither the court, nor the jury, will be allowed to make an agreement for them upon the subject. It is elementary in the law that, for the validity of a contract, the promise, or the agreement, of the parties to it must be certain and explicit and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague, nor indefinite, and, if thus defective, parol proof cannot be resorted to. (1 Comyn on Contracts, 3; 1 Chitty on Contracts, 92; *Elmore* v. *Kingscote*, 5 B. & C. 583; *Blagden* v. *Bradbear*, 12 Ves. 468; *Williams* v. *Morris*, 95 U. S. at p. 456; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273; *Stone* v. *Browning*, 68 N. Y. 598–604.) The latter case is not parallel in its facts; but a question arose whether there was a sufficient memorandum of the contract for the sale of the goods to satisfy the requirements of the Statute of Frauds, and a letter of the defendant was relied upon for the purpose. Judge RAPALLO observed that it did not "state the price, or any of the terms of the contract. Those deficiencies cannot be supplied by oral evidence. All the essential parts of the contract must be evidenced by the writing. This objection, without reference to others, is conclusive." The rules of evidence exclude oral testimony with reference to the understanding of the parties, or to supply omissions, and permit it, only, when to do so is necessary to explain the meaning of some technical, or ambiguous language used. It will not permit it to vary the terms of the contract itself by inserting in the writing what is not there. (1 Greenl. Evid. secs. 275–277, 282; *Drake* v. *Seaman*, 97 N. Y. 230–236.) In *Drake* v. *Seaman*, (*supra*), where the question arose as to the sufficiency of the memo-

randum of the parties' contract, in an action for its breach, Judge FINCH cites the language above given from Judge RAPALLO's opinion in *Stone* v. *Browning*, in support of the established rule that the Statute of Frauds requires that the memorandum contain all the material terms of the contract between the parties and that "it must show on its face what the whole agreement is so far as the same is executory, and remains to be performed, and rests upon unfulfilled promise."

This was an executory contract, which attempted to provide, over a period of years, for the furnishing of news reports on each day, with a figure stated as the limit which the price to be paid each week must not exceed. There is, thus, no rate of compensation, nor price fixed, at which the defendant was bound to take and pay for the news report, and the element of mutuality, in that respect, was wanting. It was nearly as defective, in that respect, as was the agreement in *Bromley* v. *Jefferies*, (2 Vernon, 415); where it was provided that the plaintiff should have a certain estate for £1,500 less than any other purchaser would give for it. The agreement was held to be objectionable for want of mutuality and as not obligating the plaintiff to take the estate at any price. In Browne on the Statute of Frauds there is a discussion upon the subject of the applicability of the Statute of Frauds in the case of an executory contract and the cases of *Acebal* v. *Levy*, (10 Bingh. 376), and of *Hoadly* v. *M'Laine*, (10 *ib.* 482), are referred to. (Sec. 377.) In *Acebal* v. *Levy*, it was observed by Chief Justice TINDAL that " whether in all cases of an executory contract of purchase and sale, where the parties are altogether silent as to the price, the law will supply the want of any agreement as to price by inferring that the parties must have intended to sell and to buy at a reasonable price, may be a question of some difficulty. Undoubtedly the law makes that inference where the contract is executed by the acceptance of the goods by the defendant, in order to prevent the injustice of the defendant taking the goods without paying for them. But it may be questionable whether the same reason applies to a case where the contract is executory

only, and where the goods are still in the possession, or under the control, of the seller." I do not think that the force of the doubt, which the chief justice expressed in *Acebal* v. *Levy*, was affected by his opinion shortly after expressed in *Hoadly* v. *M'Laine*. The facts of that case were such as, naturally, to take it out of the statute. That was an action against the defendant for not accepting, and paying for, a carriage made under his written order by the plaintiff. The question was whether, as the price was left uncertain, the statute applied to such an executory contract. It was observed by Chief Justice TINDAL that a contract for a sale of a commodity, in which the price is left uncertain, is, in law, a contract for what the goods shall be found to be reasonably worth, and he held, applying that principle to the case at bar, that, as it appeared that the defendant had written to the plaintiff, desiring that he would send his bill for the carriage and announcing his intention to have it out immediately, the facts showed that he knew he was to pay a reasonable charge when the article was made up, and that " taking the whole together there can be no doubt that there is a sufficient memorandum of the bargain." It is evident from his opinion, as it is from the other opinions, that the facts, in the subsequent writings and conduct of the defendant, were regarded as evidencing his undertaking to pay for the carriage *quantum valebat.* (See also *Goodman* v. *Griffiths*, 1 H. & N. 574.)

I have referred to these authorities as, possibly, throwing some side light upon the discussion, and not as exactly applicable; for the question before us is whether the contract of the parties was of that legally complete character as would bind either to continue under it. For what had been furnished and accepted, the defendant had paid. It merely takes the position that it was no longer obligated to receive and pay for the reports, when the price could not be agreed upon.

I entertain no doubt that, where work has been done, or articles have been furnished, a recovery may be based upon *quantum meruit*, or *quantum valebant ;* but, where a contract is of an executory character and requires performance

over a future period of time, as here, and it is silent as to the price which is to be paid to the plaintiff during its term, I do not think that it possesses binding force. As the parties had omitted to make the price a subject of covenant, in the nature of things, it would have to be the subject of future agreement, or stipulation, and, to use the language of the opinion in *Buckmaster* v. *Consumers' Ice Co.*, (5 Daly, 313), if the price each week was to be by future agreement, the contract was not legally binding on either party, as neither could be compelled to agree with the other.

In *Kennedy* v. *McKone*, (10 App. Div. 88), which is cited by the appellant, the contract of the plaintiff to do certain work for the defendant was fully executed and the plaintiff's action was to recover for the work which he had actually done. The contract was indefinite as to price and provided that it should not exceed $1,500; but, as the work had been done upon the defendant's house, the court permitted the recovery of its reasonable value within the limit of the sum named. The case is not parallel. Here, the defendant had declined to be bound by the contract, or to take any further reports from the plaintiff thereafter.

The effect upon the instrument of its indefiniteness, or uncertainty, as to the price to be paid, was to make it operative only so long as the parties chose, and were able, to agree upon the price per week. In other words, whether it should have contractual force, would depend upon the subsequent agreement of the parties and, manifestly, if anything remained to be done by them, relating to the subject-matter of the contract, it was an incomplete and unenforceable instrument. The payment of $300 each week in the past, for the news report furnished, was not an acknowledgment of an obligation to pay that amount during the whole contemplated life of the contract, as Mr. Justice Patterson observed at the Appellate Division. It is evident that the parties recognized their contract to be uncertain, or indefinite, as to the price, from their correspondence and the efforts to come to a mutual understanding and agreement upon the subject. The defend-

ant committed a technical breach of its agreement to receive the news reports from the defendant; but, because of the indefiniteness of the obligation, only nominal damages were recoverable. There was no price fixed by the contract and the defect could not be supplied by parol. There was lacking, therefore, any basis for establishing any measure of damages.

At the close of the trial an exception was taken to the granting of the defendant's motion for an extra allowance and it is now argued, in behalf of the plaintiff, that it was unauthorized by law. I think that no error was committed in this respect. The Code of Civil Procedure denies costs to the plaintiff, unless he recovers the sum of $50, or more, (Sec. 3228), and provides, (Sec. 3229), that "the defendant is entitled to costs, of course, * * * unless the plaintiff is entitled to costs." The provision which authorizes the granting of an additional allowance in difficult cases is contained in the chapter on costs, (Sec. 3253), and reads that "the court may also, in its discretion, award to any party a further sum * * * in any action * * * where a defense has been interposed, a sum not exceeding five per centum upon the sum recovered or claimed, or the value of the subject-matter involved." There is no limitation in this language to the party in whose favor the verdict, or the judgment, runs. The additional allowance is treated as a part of the costs of the action, to which a party becomes entitled. The defendant, here, by reason of the plaintiff's recovering less than $50, was, in fact, the prevailing party, and became entitled to the costs of the action. (See *Landon* v. *Van Etten*, 57 Hun, 122; *Safety Steam Generator Company* v. *Dickson Mfg. Company*, 61 ib. 335.)

The judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur; LANDON, J., dissents.

Judgment affirmed.