GEORGE A. VARNEY, Appellant, *v.* ISAAC E. DITMARS, Respondent.

Contract — evidence — executory contracts must be certain and explicit, and if vague or indefinite cannot be explained by parol evidence — when contract for employment at certain price per week and fair and reasonable percentage to be thereafter fixed cannot be enforced.

1. For the validity of an executory contract, the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to.

2. The plaintiff, an architect and draftsman, was employed by defendant at a salary of thirty-five dollars per week. While so employed defendant said to plaintiff and another employee: "I am going to give you $5 more a week; if you boys will go on and continue the way you have been and get me out of this trouble and get these jobs started that were in the office three years, on the first of next January I will close my books and give you a fair share of my profits." Plaintiff continued in defendant's employment and was paid forty dollars a week until he was discharged therefrom later in the year for alleged disloyalty and insubordination, some of the work referred to having been completed in the meantime. Defendant denied that he had any agreement with plaintiff and refused to permit him to continue in his service. Plaintiff seeks to recover in this action for services from just prior to the time of the alleged discharge until January first next thereafter at the rate of forty dollars per week and also for a fair and reasonable percentage of the net profits of the defendant's business from the time of the conversation above referred to up to the same date. *Held*, that the statement alleged to have been made by the defendant about giving the plaintiff a fair share of his profits is vague, indefinite and uncertain, and the amount cannot be computed from anything that was said by the parties or by reference to any document, paper or other transaction. The minds of the parties never met upon any particular share of the defendant's profits to be given the employee or upon any plan by which such share could be computed or determined. The contract so far as it related to the special promise or inducement was never consummated; further, that on the testimony as it appears before the court it properly refused to leave to

the jury the question whether the plaintiff was entitled to recover anything at the rate of forty dollars per week, and the complaint was properly dismissed. (*United Press* v. *N. Y. Press Co., Ltd.,* 164 N. Y. 406, followed.)

*Varney* v. *Ditmars,* 159 App. Div. 911, affirmed.

(Argued December 15, 1915; decided February 22, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 5, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benjamin Reass* and *Max Teff* for appellant. The contract was enforceable. (*King* v. *Broadhurst,* 164 App. Div. 689; *Donovan* v. *Harriman,* 139 App. Div. 588; *Howie* v. *Kosnowitz,* 83 App. Div. 295.)

*Harry N. French* and *Frederick Hulse* for respondent. There was no contract between the parties other than one continued from week to week as long as the plaintiff was willing to work for the defendant and the defendant was willing to employ the plaintiff. (*United Press* v. *N. Y. Press Co.,* 164 N. Y. 406; *Mackintosh* v. *Kimball,* 101 App. Div. 494; *Bluemner* v. *Garvin,* 120 App. Div. 29; *Lambert* v. *Hays,* 136 App. Div. 574; *Butler* v. *Kemmerer,* 218 Penn. St. 242; *Seebeh* v. *American M. & M. Co.,* 32 N. Y. S. R. 1051; 128 N. Y. 679.) The plaintiff was not entitled to recover for unpaid salary from November 11 to December 31, 1911. (*Howard* v. *Daly,* 61 N. Y. 362; *Weed* v. *Burt,* 78 N. Y. 191; *Prior* v. *Flagler,* 13 Misc. Rep. 115; *McGarrigle* v. *McCosker,* 83 App. Div. 184.)

CHASE, J. This is an action brought for an alleged wrongful discharge of an employee. The defendant is an

architect employing engineers, draftsmen and other assist-
ants.   The plaintiff is an architect and draftsman.   In
October, 1910, he applied to the defendant for employ-
ment and when asked what wages he wanted, replied that
he would start for $40 per week.   He was employed at
$35 per week.   A short time thereafter he informed the
defendant that he had another position offered to him
and the defendant said that if he would remain with him
and help him through the work in his office he thought
he could offer him a better future than anybody else.
He continued in the employ of the defendant and became
acquainted with a designer in the office and said designer
and the plaintiff from time to time prior to the 1st of
February, 1911, talked with the defendant about the work
in his office.   On that day by arrangement the two
remained with the defendant after the regular office hours
and the defendant said: "I am going to give you $5 more
a week; if you boys will go on and continue the way you
have been and get me out of this trouble and get these jobs
started that were in the office three years, on the first of
next January I will close my books and give you a fair
share of my profits.   That was the result of the conver-
sation.   That was all of that conversation."   The plaintiff
was given charge of the drafting.   Thereafter sugges-
tions were made by the plaintiff and said designer about
discharging many of the defendant's employees and
employing new men and such suggestions were carried
out and the two worked in the defendant's office over
time and many Sundays and holidays.   At least one piece
of work that the defendant said had been in his office for
three years was completed.   The plaintiff on his cross-
examination told the story of the employment of himself
and said designer as follows:   "And he says at that time
'I am going to give you $5 more a week starting this
week.'   This was about Thursday.   He says 'You boys
go on and continue the work you are doing and the first
of January next year I will close my books and give

you a fair share of my profits.' Those were his exact words."

Thereafter the plaintiff was paid $40 a week. On November 6, 1911, the night before the general election in this state, the defendant requested that all of his employees that could do so, should work on election day. The plaintiff told the defendant that he wanted to remain at home to attend an election in the village where he lived. About four o'clock in the afternoon of election day he was taken ill and remained at his house ill until a time that as nearly as can be stated from the evidence was subsequent to December 1, 1911. On Saturday, November 11, the defendant caused to be delivered to the plaintiff a letter in which he said:

"I am sending you herewith your pay for one day's work of seven hours, performed on Monday, the 6th inst. On Monday night, I made it my special duty to inform you that the office would be open all day Election Day and that I expected you and all the men to report for work. Much to my surprise and indignation, on Tuesday you made no appearance and all the men remained away, in obedience of your instructions to them of the previous evening. An act of this kind I consider one of extreme disloyalty and insubordination and I therefore am obliged to dispense with your services."

After the plaintiff had recovered from his illness and was able to do so he went to the defendant's office (the date does not appear) and told him that he was ready, willing and able to continue his services under the agreement. The defendant denied that he had any agreement with him and refused to permit him to continue in his service. Thereafter and prior to January 1, 1912, the plaintiff received for special work about $50.

The plaintiff seeks to recover in this action for services from November 7, 1911, to December 31, 1911, inclusive, at $40 per week and for a fair and reasonable percentage of the net profits of the defendant's business from Feb-

ruary 1, 1911, to January 1, 1912, and demands judgment for $1,680.

At the trial he was the only witness sworn as to the alleged contract and at the close of his case the complaint was dismissed.

The statement alleged to have been made by the defendant about giving the plaintiff and said designer a fair share of his profits is vague, indefinite and uncertain and the amount cannot be computed from anything that was said by the parties or by reference to any document, paper or other transaction. The minds of the parties never met upon any particular share of the defendant's profits to be given the employees or upon any plan by which such share could be computed or determined. The contract so far as it related to the special promise or inducement was never consummated. It was left subject to the will of the defendant or for further negotiation. It is urged that the defendant by the use of the word "fair" in referring to a share of his profits, was as certain and definite as people are in the purchase and sale of a chattel when the price is not expressly agreed upon, and that if the agreement in question is declared to be too indefinite and uncertain to be enforced a similar conclusion must be reached in every case where a chattel is sold without expressly fixing the price therefor.

The question whether the words "fair" and "reasonable" have a definite and enforceable meaning when used in business transactions is dependent upon the intention of the parties in the use of such words and upon the subject-matter to which they refer. In cases of merchandising and in the purchase and sale of chattels the parties may use the words "fair and reasonable value" as synonymous with "market value." A promise to pay the fair market value of goods may be inferred from what is expressly agreed by the parties. The fair, reasonable or market value of goods can be shown by direct testimony of those competent to give such testimony. The

competency to speak grows out of experience and knowledge. The testimony of such witnesses does not rest upon conjecture. The opinion of this court in *United Press* v. *N. Y. Press Co.* (164 N. Y. 406) was not intended to assert that a contract of sale is unenforceable unless the price is expressly mentioned and determined.

In the case of a contract for the sale of goods or for hire without a fixed price or consideration being named it will be presumed that a reasonable price or consideration is intended and the person who enters into such a contract for goods or service is liable therefor as on an implied contract. Such contracts are common, and when there is nothing therein to limit or prevent an implication as to the price, they are, so far as the terms of the contract are concerned, binding obligations.

The contract in question, so far as it relates to a share of the defendant's profits, is not only uncertain but it is necessarily affected by so many other facts that are in themselves indefinite and uncertain that the intention of the parties is pure conjecture. A fair share of the defendant's profits may be any amount from a nominal sum to a material part according to the particular views of the person whose guess is considered. Such an executory contract must rest for performance upon the honor and good faith of the parties making it. The courts cannot aid parties in such a case when they are unable or unwilling to agree upon the terms of their own proposed contract.

It is elementary in the law that, for the validity of a contract, the promise, or the agreement, of the parties to it must be certain and explicit and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to. (*United Press* v. *N. Y. Press Co., supra,* and cases cited; Ruling Case Law, vol. 6, 644.)

The courts in this state, in reliance upon and approval of the rule as stated in the *United Press* case, have decided

many cases involving the same rule.  Thus, in *Mackintosh* v. *Thompson* (58 App. Div. 25) and again in *Mackintosh* v. *Kimball* (101 App. Div. 494) the plaintiff sought to recover compensation in addition to a stated salary which he had received and which additional amount rested upon a claim by him that while he was employed by the defendants he informed them that he intended to leave their employ unless he was given an increase in salary, and that one of the defendants said to him that they would make it worth his while if he would stay on, and would increase his salary, and that his idea was to give him an interest in the profits on certain buildings that they were then erecting.  The plaintiff further alleges that he asked what would be the amount of the increase and was told, " You can depend upon me; I will see that you get a satisfactory amount."  The court held that the arrangement was too indefinite to form the basis of any obligation on the part of the defendants.

In *Bluemner* v. *Garvin* (120 App. Div. 29) the plaintiff and defendant were architects, and the plaintiff alleged that he drew plans for a public building in accordance with a contract held by the defendant and pursuant to a special agreement that if the plans were accepted the defendant would give him a fair share of the commissions to be received by him.  The court held that a good cause of action was stated on *quantum meruit*, but that the contract was too vague and indefinite to be enforced.

A similar rule has been adopted in many other states. I mention a few of them.  In *Fairplay School Township* v. *O'Neal* (127 Ind. 95) a verbal contract between a school trustee and a teacher, in which the latter undertook to teach school for a term in the district, and the trustee promised to pay her " good wages," it was held that the alleged contract was void for uncertainty as to compensation, and that the school township was not liable for its breach.

In *Dayton* v. *Stone* (111 Mich. 196) the plaintiff had sold to the defendant her stock of goods and fixtures, and by the contract of sale the undamaged goods were to be inventoried and taken at cost price, and the damaged goods at prices to be agreed upon. In an action for breach of contract it was held that the contract was an entire one, and that so far as it left the price of the damaged goods to be fixed and determined it was uncertain and incomplete, and not one which could be enforced against the defendant.

In *Wittkowsky* v. *Wasson* (71 N. C. 451) it was held that where the price of certain property was to be fixed by agreement between the parties after the time of the agreement and they did not agree upon the price that the title to the property did not pass.

In *Adams* v. *Adams* (26 Ala. 272) a promise by a defendant for a valuable consideration to give his daughter a "full share of his property" which then and there was worth $25,000 was held to be too indefinite and uncertain to support an action.

In *Van Slyke* v. *Broadway Ins. Co.* (115 Cal. 644) a contract between an insurance agent and the insurance company for a contingent commission of 5% which did not give the facts upon which the contingency depended nor state the sum on which the 5% was to be computed was held unenforceable and also that it could not be aided by parol.

In *Marvel* v. *Standard Oil Co.* (169 Mass. 553) a contract by which the defendant agreed to sell the plaintiff its oil on such reasonable terms as to enable him to compete successfully with other parties selling in the same territory was held to be too indefinite and too general to be enforceable as a contract.

In *Burks* v. *Stam* (65 Mo. App. 455) a contract for the sale of two race horses for a specified sum and providing for a further payment of a fixed sum by the purchaser if he did well and had no bad luck with the horses was held too vague to admit of enforcement.

In *Butler* v. *Kemmerer* (218 Pa. St. 242) the plaintiff was in the employ of the defendant at a regular salary and the defendant promised him that if there were any profits in the business he would divide them with the plaintiff "upon a very liberal basis." The action was brought to recover a part of the profits of the business and the court held that the contract was never made complete and that there was no standard by which to measure the degree of liberality with which the defendant should regard the plaintiff.

The only cases called to our attention that tend to sustain the appellant's position are *Noble* v. *Joseph Burnett Co.* (208 Mass. 75) and *Silver* v. *Graves* (210 Mass. 26). The first at least of such cases is distinguishable from the case under consideration, but in any event the decisions therein should not be held sufficient to sustain the plaintiff's contention in view of the authorities in this state.

The rule stated from the *United Press* case does not prevent a recovery upon *quantum meruit* in case one party to an alleged contract has performed in reliance upon the terms thereof, vague, indefinite and uncertain though they are. In such case the law will presume a promise to pay the reasonable value of the services. Judge GRAY, who wrote the opinion in the *United Press* case, said therein: "I entertain no doubt that, where work has been done, or articles have been furnished, a recovery may be based upon *quantum meruit,* or *quantum valebat;* but, where a contract is of an executory character and requires performance over a future period of time, as here, and it is silent as to the price which is to be paid to the plaintiff during its term, I do not think that it possesses binding force. As the parties had omitted to make the price a subject of covenant, in the nature of things, it would have to be the subject of future agreement, or stipulation." (p. 412.)

In *Petze* v. *Morse Dry Dock & Repair Co.* (125 App. Div. 267, 270) the court say: " There is no contract so long

as any essential element is open to negotiation." In that case a contract was made by which an employee in addition to certain specified compensation was to receive 5% of the net distributable profits of a business and it was further provided that "the method of accounting to determine the net distributable profits is to be agreed upon later when the company's accounts have developed for a better understanding." The parties never agreed as to the method of determining the net profits and the plaintiff was discharged before the expiration of the term. The court in the opinion say that "the plaintiff could recover for what he had done on a *quantum meruit*, and the employment must be deemed to have commenced with a full understanding on the part of both parties that that was the situation." The judgment of the Appellate Division was unanimously affirmed without opinion in this court. (195 N. Y. 584.)

So, in this case, while I do not think that the plaintiff can recover anything as extra work, yet if the work actually performed as stated was worth more than $40 per week, he having performed until November 7, 1910, could, on a proper complaint, recover its value less the amount received. (See *Bluemner* v. *Garvin, supra; S. C.,* 124 App. Div. 491; *King* v. *Broadhurst,* 164 App. Div. 689.)

The plaintiff claims that he at least should have been allowed to go to the jury on the question as to whether he was entitled to recover at the rate of $40 per week from November 7, 1911, to December 31, 1911, inclusive. He did not perform any services for the defendant from November 6 until some time after December 1st, by reason of his illness. He has not shown just when he offered to return. It appears that between the time when he offered to return and January 1st he received $50 for other services.

The amount that the plaintiff could recover, therefore, if any, based upon the agreement to pay $40 per week

would be very small; and he did not present to the court facts from which it could be computed. His employment by the defendant was conditional upon his continuing the way he had been working, getting the defendant out of his trouble and getting certain unenumerated jobs that were in the office three years, started. There was nothing in the contract specifying the length of service except as stated. It was not an unqualified agreement to continue the plaintiff in his service until the first of January, and it does not appear whether or not the special conditions upon which the contract was made had been performed. Even apart from the question whether the plaintiff's absence from the defendant's office by reason of his illness would permit the defendant to refuse to take him back into his employ, I do not think that on the testimony as it appears before us it was error to refuse to leave to the jury the question whether the plaintiff was entitled to recover anything at the rate of $40 per week.

The judgment should be affirmed, with costs.

CARDOZO, J. (dissenting). I do not think it is true that a promise to pay an employee a fair share of the profits in addition to his salary is always and of necessity too vague to be enforced (*Noble* v. *Joseph Burnett Co.,* 208 Mass. 75; *Silver* v. *Graves,* 210 Mass. 26; *Brennan* v. *Employers Liability Assurance Corp., Ltd.,* 213 Mass. 365; *Joy* v. *St. Louis,* 138 U. S. 1, 43). The promise must, of course, appear to have been made with contractual intent (*Henderson Bridge Co.* v. *McGrath,* 134 U. S. 260, 275). But if that intent is present, it cannot be said from the mere form of the promise that the estimate of the reward is inherently impossible. The data essential to measurement may be lacking in the particular instance, and yet they may conceivably be supplied. It is possible, for example, that in some occupations an employee would be able to prove a percentage regulated by custom. The difficulty in this case is

not so much in the contract as in the evidence. Even if the data required for computation might conceivably have been supplied, the plaintiff did not supply them. He would not have supplied them if all the evidence which he offered, and which the court excluded, had been received. He has not failed because the nature of the contract is such that damages are of necessity incapable of proof. He has failed because he did not prove them.

There is nothing inconsistent with this view in *United Press* v. *N. Y. Press Co.* (164 N. Y. 406). The case is often cited as authority for the proposition that an agreement to buy merchandise at a fair and reasonable price is so indefinite that an action may not be maintained for its breach in so far as it is still executory. Nothing of the kind was decided, or with reason could have been. What the court did was to construe a particular agreement, and to hold that the parties intended to reserve the price for future adjustment. If instead of reserving the price for future adjustment, they had manifested an intent on the one hand to pay and on the other to accept a fair price, the case is far from holding that a jury could not determine what such a price would be and assess the damages accordingly. Such an intent, moreover, might be manifested not only through express words, but also through reasonable implication. It was because there was neither an express statement nor a reasonable implication of such an intent that the court held the agreement void to the extent that it had not been executed.

On the ground that the plaintiff failed to supply the data essential to computation, I concur in the conclusion that profits were not to be included as an element of damage. I do not concur, however, in the conclusion that he failed to make out a case of damage to the extent of his loss of salary. The amount may be small, but none the less it belongs to him. The hiring was not at will (*Watson* v. *Gugino,* 204 N. Y. 535; *Martin* v. *N. Y. Life Ins. Co.,*

148 N. Y. 117). The plain implication was that it should continue until the end of the year when the books were to be closed. The evidence would permit the jury to find that the plaintiff was discharged without cause, and he is entitled to damages measured by his salary for the unexpired term.

The judgment should be reversed and a new trial granted, with costs to abide the event.

COLLIN, CUDDEBACK and POUND, JJ., concur with CHASE, J.; CARDOZO, J., reads dissenting opinion, and WILLARD BARTLETT, Ch. J., and HOGAN, J., concur.

Judgment affirmed.