Matter of the Estate of ALFRED M. BROWN, Deceased.

(Surrogate's Court, New York County, September, 1921.)

Accounting — compulsory — Surrogate's Court — when creditor may compel an executrix to account.

Decedent, who had been engaged in a wholesale coal business, the gross sales of which exceeded $4,000,000 per year, gave his personal attention to the purchase and sale of the coal. The petitioner, for a compensation of an annual salary of $3,000, and fifteen per cent of the profits of the business, rendered services of a very confidential nature, the financial side, accounting, collections and credits being left to him, the decedent signing checks in blank and delivering them to petitioner for use in the business. This agreement, which was for a year, though oral, was clearly established by the declarations of decedent to third persons, and particularly from the entries made in the books of account in the usual course of business, which entries clearly and convincingly controverted a contention that certain withdrawals of funds by petitioner constituted loans or advances to him by decedent. The course of conduct between them showed that such payments were made as part of the agreement for compensation. *Held,*

Surrogate's Court, New York County, September, 1921. [Vol. 116.

that by the continuance of the rendition of such services until the death of decedent on October 4, 1918, the original agreement must be presumed to have continued during that year, and that petitioner's status as a creditor of the estate was established and that he was entitled to compel the executrix to account.

PETITION for a compulsory accounting.

Olcott, Bonynge, McManus & Ernst (Terence J. McManus and Walter E. Ernst, of counsel), for petitioner.

Platt & Field, for executrix.

FOLEY, S. Henry D. Cruger has petitioned praying for a compulsory accounting on the ground that he is a creditor of the deceased in the sum of $32,275.68. The executrix interposed an answer denying that any sum is due him. Thereupon the preliminary issue as to the status of the petition was tried before me. I hold that the applicant is a creditor and direct that a compulsory account be filed within twenty days. Alfred M. Brown was engaged in the wholesale coal business and its growth is typical of enterprises fostered by the recent World War.

The evidence shows that Cruger was employed on December 1, 1916, and continued until the death of decedent on October 4, 1918. No written contract was made between the parties. The claimant was disqualified by reason of section 829 of the Code of Civil Procedure from testifying to the nature of the agreement. His regular salary was $3,000 per year. The controversy arises over the contention of the claimant that the further sum of fifteen per cent of the net profits of the business was to be paid to him. It is clear from the declarations of deceased, and particularly from the books of account in evidence, that such was the agreement between the parties. These

Misc.]    Surrogate's Court, New York County, September, 1921.

books contain an entry on December 31, 1916, as follows: "To Henry D. Cruger, 15% of December profits, $14,233.99 — $2,135.09." They also show withdrawals by Cruger of $9,009.65 in the year 1917 in excess of his regular annual salary. On January 1, 1918, the balance due Cruger is entered as $15,125.44. There was credited to him, for his share of the profits for that year, the sum of $22,000. During the year 1918 substantial amounts were drawn by him from time to time, which amounted, at the date of Mr. Brown's death, to $10,009.97. It appears further that the services performed by Cruger were of a very confidential nature, and indicating the high degree of trust reposed in him by the deceased. The business was extensive with branches in several cities in this country, and in Canada, and the gross sales exceeded $4,000,000 per year. Mr. Brown appears to have attended to the purchase and sale of coal. The financial side, accounting, collections and credits, were left to Cruger. Checks were signed by the decedent in blank and delivered to Cruger for use in the business. The latter also supervised the staff of employees, the details of the contracts procured by Brown, and attended to the necessary bank loans, which aggregated at certain times $300,000. The evidence established that the books were in the office at all times and open to Mr. Brown when he wanted to look at them. Although the evidence strongly points to his personal examination of the books, he is, regardless of direct proof, charged with a knowledge of their contents. *Bradley* v. *McDonald,* 218 N. Y. 351, 389; *Flour City National Bank* v. *Widener,* 163 id. 276, 280; *Hotopp* v. *Huber,* 160 id. 524, 530; *Fairchild* v. *Fairchild,* 64 id. 471, 480. These book entries were made by his authorized agents and employees and therefore constitute declarations and admissions

against pecuniary interest. They are competent as admissions and entries made in the usual course of business. Chamberlayne Ev. 1723; *Govin* v. *de Miranda,* 140 N. Y. 474; Wigm. Ev. 1910; Jones Ev. 337, 400, 725; Phillips Ev. 262, 267; Chase's Stephens Dig. (2d ed.) 96. In *Matter of Gallagher,* 153 N. Y. 364, 368, it is stated: ''An entry or memorandum made by a deceased person against his interest, found in his books or papers, is in general admissible against his estate in favor of a party seeking to establish the fact stated. They are presumably truthful.''

It appears further that the Federal income tax return of Mr. Brown for the year 1917 included, as part of salary deductions from gross business income, the item of $22,000 paid to Cruger. Although all the accounts were within the possession of the estate, no explanation appears in the testimony for the executrix tending to show that the book entries were not accurate. The inference or attempted explanation in the brief of the counsel for the executrix that this item was excluded from '' salary deductions '' does not disprove the payment of $22,000 to Mr. Cruger as part of his compensation for the year 1917. Nor does it impeach Brown's knowledge of the payment included in his sworn report. It is incomprehensible and contrary to established custom, that a business man would not personally investigate the basis of his verified tax return. The intricacy of its preparation and the desire of the average taxpayer to be fair to the government and to himself makes him more than careful.

Nor is there any evidence in the record to sustain the theory of the executrix that the withdrawals by Mr. Cruger constituted a loan to him from the decedent. Indeed, the entries clearly and convincingly controvert that contention. The respondent

Misc.] Surrogate's Court, New York County, September, 1921.

attempts to explain the payments as advancements to Mr. Cruger for the purpose of financing the investigation of the disappearance of his daughter Ruth Cruger, which took place in the early part of the year 1917. In June of that year it was discovered that she had been murdered by one Cocchi. After that date the necessity for expending moneys for this purpose had ceased, yet regular withdrawals of large sums were made by her father. The record is barren of any proof showing that these withdrawals were loans or advancements. On the contrary, the check stubs and other book entries describe them as payments for salary. In the closing entries for the year 1917, the credit to Mr. Cruger of $22,000 is entered as " Salaries a/c." These entries also disprove the further contention of the executrix that the share of the profits, paid in 1916 and 1917 to the applicant, was in the nature of a bonus. The course of conduct between the parties shows that these payments were made as part of the agreement of compensation between them. A bonus is customarily paid in a lump sum at the end of the business year when the profits, if any, have been ascertained. Here the withdrawals run along in regular sequence and in varying amounts during the current year. The inference of knowledge by Brown of these withdrawals and of their clearly labelled character is plain. If the remaining theory of the executrix was to be accepted, it would compel the court to infer that the withdrawals were made covertly, without authority, and by a conversion of the moneys of the deceased. In the face of the frankness and regularity of the written entries made in the usual course of business, this hypothesis is unworthy of consideration and must be rejected. The testimony of declarations of Mr. Brown at the district attorney's office is indefinite and of no probative force as to the actual

arrangement between the parties or the sources of the moneys paid by Mr. Cruger to solve the disappearance of his daughter. In view of the foregoing reasons, *Varney* v. *Ditmars,* 217 N. Y. 223, cited by counsel for the executrix, has no application here. In that case the alleged promise of compensation was vague, indefinite and executory and was held to be unenforcible.

The original agreement for compensation must be held therefore to have been for the sum of $3,000 per year and fifteen per cent of the profits of the business. This agreement was fulfilled up to December 31, 1917, and the presumption is that the agreement continued during the year 1918. No determination is made by me as to the amount due. The status, however, of the petitioner as a creditor is established.

Ordered accordingly.