## NORTH AMERICAN CAR CORPORATION v. GREEN.

No. 25987. Oct. 22, 1935.

Rehearing Denied Dec. 3, 1935.

Gibson, Maxey & Holleman, for plaintiff in error.

McLaury & Hopps and Albert L. McRill, for defendant in error.

CORN, J. This is an action by B. F. Green to recover for services rendered to the North American Car Corporation, a corporation, upon an oral contract of employment, alleged to have been made and entered into by the duly and authorized officers of said corporation.

The corporation filed a verified answer, expressly denying the allegations of plaintiff's petition.

The parties will be referred to as they appeared in the trial court, reverse to the order here.

The cause was tried to a jury, resulting in a judgment for the plaintiff.

The evidence of the plaintiff shows he entered into an oral contract of employment with N. L. Howard, president of the defendant corporation, to acquire certain oil properties for said corporation in the Oklahoma City field; that the said president and Mr. Roblee, vice president of the corporation, advised the plaintiff that it was necessary for the defendant corporation to acquire additional properties, and that if the plaintiff would acquire certain properties for the corporation he would be taken care of, and would be given stock in the corporation to be organized; that the title to the properties would be taken in the name of one Sherry or in the name of the Sherry Petroleum Company; that certain properties were acquired through the efforts of the plaintiff for the defendant and $30,000 cash was paid by the trustee of the defendant corporation to the Plains Petroleum Corporation, the owner of the properties purchased; that the said officers of the defendant corporation told the plaintiff that he would be adequately taken care of and compensated for his services in procuring said property; that the plaintiff, after finding that certain properties could be purchased from the Plains Petroleum Corporation, explained the proposition to the president of the defendant corporation, and the said president then orally employed the plaintiff to work up the deal for the purchase of these properties for the defendant corporation: that the deal was consummated with the Plains Petroleum Corporation on October 24, 1931; that the purpose of acquiring the property was to write off a corporation by the name of the White Oak Corporation and put these new prop-

erties in the place of said corporation owned by the defendant corporation; that the plaintiff for the defendant helped to work out a deal with the Sherry Petroleum Corporation by which that corporation was to receive one-third interest in the properties and the defendant corporation a two-thirds interest; that according to the arrangement made between the defendant corporation and the Sherry Petroleum Corporation the Centorp Corporation, later to be organized, would hold the properties for the defendant corporation; that all of the matters respecting the title to the property and the holding of the property were discussed and agreed upon between the plaintiff and the president and vice president of defendant corporation; that the defendant corporation desired to have the property put in the name of some other corporation because the defendant corporation did not want to assume any indebtedness.

The evidence further shows that the plaintiff worked under this special contract, at nights, checking up on the various properties, and worked day and night for quite a long time in addition to carrying on his regular work with the White Oak Corporation; that plaintiff began working to acquire these properties for the defendant in the summer of 1931, and spent about two months at this work; that from time to time the plaintiff reported his progress to the officers of the defendant corporation, and received instructions from time to time from these officers; that after plaintiff checked the Plains Petroleum Corporation properties and reported them to the officers of the defendant corporation, the officers of said corporation told the plaintiff to go ahead and try to work up a deal for the purchase of these properties for the defendant corporation; that the plaintiff spent two or three months investigating and checking, talking to engineers and geologists, working nights and Sundays, in addition to doing his regular work for another corporation; that after the properties had been checked, and after the plaintiff had spent two or three months in doing this work, he recommended to the defendant corporation that it would be a good plan to have Mr. Sherry take over these properties, supervise them, and assume the liability; that the officers of the defendant corporation accepted the plaintiff's recommendation and Mr. Sherry did take over these properties; that upon the advice and instruction of the officers of the defendant corporation the plaintiff went ahead and consummated the deal with the Plains Petroleum Corporation and Mr. Sherry, and

the property was taken in the name of Mr. Sherry, who assumed the obligations of the property; that no money was put into the properties except that advanced by the defendant corporation; that after the deal was made with Mr. Sherry the plaintiff continued to keep in touch with the situation for the defendant corporation pursuant to instructions from the officers of said corporation, although Mr. Sherry went ahead and closed the deal with the Plains Petroleum Corporation; that from time to time the plaintiff conferred with the officers of the defendant corporation as to the details of the whole transaction.

The evidence also shows that title to all or part of the properties acquired through the efforts of the plaintiff for the defendant corporation were transferred to the Centorp Corporation, a corporation organized for the purpose of holding properties of the defendant corporation.

The testimony of the witnesses for the defendant denies that it ever entered into a contract of employment with the plaintiff, or that he had anything whatever to do with the deal as finally closed.

The plaintiff in error sets up eleven specifications of error. The first three are argued together in its brief. They raise the one question that the verdict and judgment are not supported by sufficient evidence. The evidence of the plaintiff shows clearly that the authorized officers of the defendant corporation employed the plaintiff to procure certain oil properties for the defendant corporation, and that these officers agreed with the plaintiff that he would be adequately compensated and given stock in a corporation which was to be organized to hold the properties purchased by the defendant corporation through the efforts and negotiations of the plaintiff.

It is also undisputed that the plaintiff was never paid anything for his services in investigating and procuring these properties.

These properties were procured for the defendant through the efforts of the plaintiff. There was no agreement as to the amount the plaintiff was to receive. The defendant accepted the benefits of the services rendered by the plaintiff, and the defendant in no way compensated the plaintiff for his services. Whether the plaintiff was to be paid in stock or in money we will treat as immaterial, for the reason that the defendant, after accepting the benefits of the plaintiff's services, repudiated the

contract in its entirety and has made no tender of money or stock as compensation for the services rendered by the plaintiff.

It is urged by the defendant in its brief that the plaintiff, as an employee of the two corporations which were controlled by the defendant, was under obligation to do the things that he did do in procuring these properties for the defendant, and that the salary which he received from the White Oak Corporation compensated him for his special work which he did for the defendant corporation.

This is denied by the plaintiff, who also contends there was a special contract between the defendant corporation and the plaintiff for the rendering of special services which were rendered by the plaintiff, and which special services procured for the defendant corporation the properties which the plaintiff was employed to procure by this special contract.

The cases cited in the defendant's brief all hold that where there is a special contract to render special service, even between the employer and employee direct, the employee is entitled to compensation for the rendering of the special services in addition to the compensation which he receives as a regular employee. There can be no doubt, and there was no doubt in the minds of the jury, but that the plaintiff was employed by the defendant corporation to render a special service, and that this special service was rendered, and the defendant received and enjoyed the benefits of that special service. There is nothing indefinite about the contract, except the amount of the compensation which the plaintiff was to receive. That is the reason advanced by the plaintiff for suing on quantum meruit.

The law is well established, where one party is put to work by a second party, and the second party tells the first party that he will be taken care of for the services rendered and these services are rendered by the first party pursuant to the contract, the second party is obligated to pay to the first party the reasonable value of his services. Every principle of law and of equity is opposed to the doctrine that after one party has accepted the benefits of services rendered by another party, the one receiving the benefits can escape payment to the party who rendered services by contending that there was something indefinite about the contract. There was nothing uncertain about the contract, except the amount the plaintiff was to receive, whether in stock or in money. It is this uncertainty, or the failure to specify the exact compensation, that makes it necessary to sue for the reasonable value of the services. Let it be admitted that the plaintiff was to receive as compensation for his services stock in a certain corporation. The defendant failed to deliver this stock, and it did not even tender the stock in its answer. In other words, the defendant breached the contract by repudiating the contract in its entirety and refusing to pay the plaintiff anything for his services. There was no definite understanding as to the amount of stock the plaintiff was to receive for his services. It must be implied, as it is in all contracts where the value of the services is not fixed, that the plaintiff would be paid, either in stock or in money, the reasonable value of his services. There is no way to estimate this reasonable value except in terms of money. The defendant having repudiated the contract, and denied any and all liability on the contract, and having failed to tender to the plaintiff either stock or money, the defendant cannot now defend an action on the contract by saying that the plaintiff should have sued the defendant to recover the stock which the defendant never agreed to deliver to the plaintiff.

The law is well settled that in order to constitute a valid contract, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean and what the consideration is.

We have all the conditions of a valid contract in the instant case. The plaintiff was employed by the defendant to render certain services. Those services were rendered by the plaintiff and the defendant accepted and has retained all the benefits of said services. The defendant, after accepting the benefit of the services of plaintiff, refused to compensate the plaintiff, either by issuing the stock or by the payment of money. That constituted a breach of the contract and entitled the plaintiff to bring suit to recover the reasonable value of his services.

The defendant in its brief quotes section 9972, O. S. 1931, which provides that:

"* * * The detriment caused by a breach of a seller's agreement to deliver personal property, the price of which has been fully paid to him in advance, is deemed to be the same in case of a wrongful conversion."

This is not a suit on a contract to sell or purchase personal property. If there had been an agreement between the parties for

the defendant to sell the plaintiff certain personal property, and the defendant had breached that contract to sell, this section of the statute would give the measure of damages in a suit on a contract to buy or sell any personal property. In the instant case we have no contract to buy or sell any personal property. It is a contract of employment, and the contract of employment is in no way affected by the method of payment provided in the contract. When the plaintiff complied with the contract and rendered the services he agreed to render, the defendant became indebted to the plaintiff and was obligated to pay the plaintiff as provided in the contract. Section 9972, supra, has to do with contracts to sell and is not applicable to a contract of employment and payment thereunder.

It must be kept in mind that this contract does not specify the compensation to be paid, nor is the amount of compensation fixed.

In 5 C. J., pages 1386 to 1388, it is held in effect that where a contract has been fully performed, and nothing remains to be done but the payment for the services, the plaintiff may sue for the value of the services, whether the action be treated as an action on contract or for damages.

It seems to be the contention of the defendant that because the contract does not definitely fix the amount of stock to be delivered, or the amount of compensation to be paid, the contract itself is so indefinite that it cannot be enforced. There is no law of contract more definitely fixed than that where an agreement is made to render services and no definite compensation is agreed on, the plaintiff is entitled to recover compensation on the basis of quantum meruit. It would be against all principles of both law and equity to permit the defendant to accept the benefits of the services rendered by the plaintiff and then refuse to pay the plaintiff because the parties had not definitely agreed on the compensation.

The case of Hughes v. Pacific W. & S. Co., 205 P. 105, decided by the Supreme Court of California, lays down the rule as follows:

"One employed to superintend the doing of work is entitled to the reasonable value of his services, in the absence of a contract fixing the amount of his compensation."

In the case of Varney v. Ditmars, 217 N. Y. 223, 111 N. E. 822, the court said:

"Where an employee continued at work under an agreement by his employer to share profits, the agreement, though vague and indefinite, will furnish basis for an action on the quantum meruit."

In the case of Hunt v. Van Siclen, 136 Okla. 69, 276 P. 182, this court said:

"The rule that the measure of recovery in an action on quantum meruit, where the evidence establishes a special contract, is limited to and must not exceed the amount specified in the contract, has no application where there is no definite price fixed in said contract."

Employer, who accepts benefit of employee's services, must pay therefor on quantum meruit in the absence of an agreement fixing the amount of his compensation.

The contract between the plaintiff and the defendant specifies that the plaintiff should be paid for his services in stock of the corporation without specifying the number of shares the plaintiff was to receive. The plaintiff rendered the services and the defendant refused to recognize the contract or to deliver any stock to the plaintiff or pay him for his services. Obviously, because of the repudiation of the contract by the defendant, there could be no agreement between the parties as to the amount of stock that would be adequate compensation. Under this state of facts, the only thing the plaintiff could do was to sue for the value of his services.

The law is well established that in a law action tried to a jury this court on appeal will not reverse the judgment because of the insufficiency of the evidence, where there is competent evidence reasonably tending to support the judgment. The law is also well established in this jurisdiction that if there is any competent evidence reasonably tending to support the verdict, the same will not be disturbed on appeal, and where the evidence is conflicting, this court will not examine the evidence for the purpose of determining the weight thereof.

We find sufficient competent evidence reasonably tending to support the verdict of the jury. It is true there is a conflict in the testimony, but the testimony of the plaintiff is definite and certain, establishing the contract, the rendering of the services and the reasonable value of said services, and this court will not examine the evidence for the purpose of determining the weight thereof.

Assignments of error Nos. 4 to 10, inclusive, complain that the trial court committed

error in its instructions and in not allowing requested instructions submitted by the defendant.

We have made a careful examination of the instructions as given by the court, and find they fairly cover the case according to the evidence produced, and also find that the court did not err in refusing to give the requested instructions.

In assignment No. 11, the defendant complains that the trial court erred in not granting a new trial for the reason that the trial judge expressed dissatisfaction with the verdict of the jury. There is no dispute as to the law in this jurisdiction touching the duties of the court to grant a new trial, where in the judgment of the court the verdict is not sustained by sufficient evidence. The remarks of the court do not show that the trial judge did not believe there was evidence to support the verdict. The defendant does not set forth in its brief the language used by the trial judge. All the trial judge said, in substance, was that if he had been on the jury he would have voted for the defendant. The trial judge said, however, that it was the province of the jury to pass on the credibility of the witnesses, and that if the jury believed the testimony of the plaintiff, it was not the province of the court to disbelieve that evidence and set aside the verdict of the jury based on sufficient evidence.

The trial court was correct in the position it took in regard to setting aside the verdict of the jury. The testimony of the plaintiff is definite and positive as to the making of the contract, the rendering of the services, and the reasonable value of the services. It is true that witnesses for the defendant corporation denied the truth of the plaintiff's testimony, but no attempt was made to impeach the plaintiff, nor was there any reason why the jury should not believe the plaintiff's evidence and render judgment against the defendant.

Although the trial judge did express some dissatisfaction with the verdict of the jury, nevertheless he approved the verdict. The overruling of the defendant's motion for new trial was in effect an approval of the verdict by the trial judge. In addition to that the trial judge testified at a hearing some months later in connection with the settling of the case-made. At that time he testified in reference to his action in theretofore overruling the motion for new trial, and said in his testimony, 'I did approve the verdict, and I said 'now I approve the verdict.' "

It is then for this court to examine the evidence and follow the rule long established by this court to the effect that where is any evidence reasonably tending to support the verdict, the court will not disturb that verdict.

There being ample evidence to warrant the jury in rendering a verdict for the plaintiff, and no substantial error appearing in the record, the judgment of the trial court is therefore affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.