(58 App. Div. 25.)

MACKINTOSH v. THOMPSON et al.

(Supreme Court, Appellate Division, First Department.   February 8, 1901.)

MASTER AND SERVANT—SALARY—INCREASE—CONTRACTS—EVIDENCE.

Plaintiff, an architect, was working for defendants for a regular salary, when he asked an increase. One of the defendants said that his idea was to give plaintiff an interest in two buildings that they were then building; that the amount of the cost of those buildings was so enormous that he could rely on the compensation being enlarged. And, on plaintiff asking how he was to know what he would get, he replied that plaintiff could rely on him, that he would see that it was all right, and that plaintiff did not know what he had in view. There was no other talk about the matter. Plaintiff continued to work for defendants for more than two years, receiving the same salary as before, and sued to recover additional pay. *Held*, that no contract for an increase of salary was made, and the complaint was properly dismissed.

Appeal from trial term, New York county.

Action by Alexander Mackintosh against George K. Thompson and another. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The action was brought upon an alleged contract of employment. The complaint alleges that on or about the 11th of March, 1896, the plaintiff entered into a contract with the defendants whereby plaintiff agreed to remain in their employ at the same salary which he was then receiving, during the completion by the defendants of two certain buildings, in consideration of the defendants' agreement with the plaintiff, then and there made, to pay him, in addition to his salary, the reasonable value of his services and time spent upon said buildings while in the defendants' employ; that the plaintiff, in the performance of his duties under the contract, was employed for over two years, and the buildings in question are now completed, and the reasonable value of his services, above his salary, is $12,356.20. At the opening the plaintiff's attorney claimed for plaintiff "a reasonable interest in the two buildings if he should stay until they were completed,"—an interest in the profits. Objection was made to showing this under the complaint, which alleged reasonable value of services, and the court said: "You say nothing about profits in the complaint." Plaintiff's attorney asked to add to the complaint, after the words, "the reasonable value of his services and time spent upon said buildings while in said defendants' employ," the words, "in the shape of such interest in the profits of these two buildings as may be reasonable." This amendment was opposed, and the motion was denied and exception taken. The plaintiff's attorney said: "I do not think that requires any accounting. We have no right to an accounting as an employé, and we do not claim that Mackintosh was a partner." The plaintiff testified: That he was an architect and architectural designer, and considered himself thoroughly competent as an expert designer and draftsman in the architectural line. That he was employed by defendants in 1893, and in 1895 told them he intended to leave their employ unless they paid him more money, and was told that just then no increase could be given, but he should be paid more if more work came in. That in March, 1896, he reminded Mr. Kimball of the promise, and referred to the new work being done on the Empire and the Altman Buildings, and said he would start for himself if he was not paid more. That "Mr. Kimball said that his idea was to give me an interest in the Altman Building and in the Empire Building. He said that the amount of the cost of those buildings was so enormous 'that you may rely on the compensation being enlarged.' Then I asked him: 'How am I to know what I will get?' He said: 'You can rely on me. I will see that it is all right.' Further, on leaving, he said: 'You don't know what I have in view.' I was to have the same salary,—$36 a week. * * * I continued with Kimball

& Thompson. * * * The share in the profits was in addition to my regular salary. I remained with the firm * * * up to the dissolution of the partnership, which took place in May or June, 1898." That there were about eight men in the designing staff under him, and his work on the buildings was to design all the work and superintend the men, and there were over 500 designs. Plaintiff then identified various designs and drawings as his, made during the work, and testified that he had worked 5,122 hours, and estimated his worth at $3 an hour, or $15,366, of which $4,656 had been paid; that he trusted Mr. Kimball to do something about an interest in the profits. On redirect examination the plaintiff testified: That Mr. Kimball said "his idea was to give me an interest in the profits upon the Altman Building and the Empire Building; that I could rest assured that the amount would be large enough, because of the enormous cost of those two buildings. He said if I left the matter to him he would see it was all right." That, in reliance on that statement, he remained with the firm. Evidence as to the defendants' profits on the two buildings was excluded, and exception taken; but two architects testified, as experts, that the work claimed to have been done by the plaintiff, as shown by the designs and drawings, was reasonably worth $3 an hour. The plaintiff having rested, motion was made to dismiss the complaint, which was granted, and motion by the plaintiff to go to the jury upon the question of how much the plaintiff's services were worth was denied. From judgment dismissing the complaint, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Frederick R. Kellogg, for appellant.
John S. Davenport, for respondents.

O'BRIEN, J. In view of the vague and indefinite conversation between the plaintiff and one of the defendants, Mr. Kimball, which the former relies upon as creating a binding contract, it is clear that if nothing had been done under it, and this were an action for breach of an executory agreement, no recovery could be had, under the recent decision of the court of appeals in United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527. In that case, as said in the headnote, there was "an executory contract in writing, attempting to provide over a period of years, for the furnishing of news reports on each day at a price 'not exceeding three hundred dollars during each and every week that said news report is received'"; and this was held "to be so indefinite as to the price to be paid as to preclude a recovery of substantial damages for its breach in refusing to receive the service." And in the course of the opinion it was said:

"It is elementary in the law that, for the validity of a contract, the promise or the agreement of the parties to it must be certain and explicit, and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to."

In referring, however, to the rule to be applied to executed contracts, the learned judge says:

"I entertain no doubt that, where work has been done or articles have been furnished, a recovery may be based upon quantum meruit or quantum valebant."

It is this rule that the plaintiff invokes, insisting that, although the amount of increased salary which he was to receive was left undecided, there was sufficient in the conversation from which an

agreement to pay an enlarged sum can be inferred, and services, as the result, having been rendered, the law will imply a promise to pay the reasonable value of such services. The error into which we think the appellant has fallen is in assuming that upon facts such as are presented here the law will infer a binding contract. To be enforced, whether executory or executed, contracts must be sufficiently definite and certain in terms that it can be seen that the minds of the parties have met upon some settled terms. Undoubtedly, where one person requests another to render to him services, and they are rendered, the law will raise an implied agreement to pay the reasonable value of such services. Here, however, the plaintiff had been working at a stated salary per week; and all that appears is that he was dissatisfied with the amount received, and that on the two occasions with reference to which he testifies he called the attention of his employers to the fact that, without some advancement, his intention was to seek other employment or start in business for himself. And the only assurance or promise made to him from which a contract is to be spelled out is from what occurred at the second interview, when, as he testifies, Mr. Kimball said that "his idea was to give me an interest in the Altman Building and in the Empire Building. He said that the amount of the cost of those buildings was so enormous 'that you may rely on the compensation being enlarged.' Then I asked him: 'How am I to know what I will get?' He said: 'You can rely on me. I will see that it is all right.' Further, on leaving, he said: 'You don't know what I have in view.'" The most that can be predicated upon such a conversation is that Mr. Kimball was favorably disposed to the consideration of the question of increased salary. But that no definite agreement of any kind was made for an increase of salary for any definite period or any stated amount is evidenced from the plaintiff's own statement at the trial that he was to get a share in the profits of the buildings in addition to his regular salary. He did not claim that he was to be taken in as a partner, but that his additional compensation, in some way, was to be measured—how does not appear—by the profits realized upon the two buildings. There is not sufficient in this vague and indefinite conversation to support a contract, because there is nothing to show that the minds of the parties met upon any binding agreement. Nor was there any consideration for an alleged promise to pay an increased salary, for the plaintiff does not say that he agreed or was under obligation to remain with the defendants for any fixed period of time. The fact is that after this one conversation the subject was never referred to again,—whether because the plaintiff had no desire to bind himself to remain for any fixed term, or because he was willing to trust to the generosity of the defendants to compensate him beyond the salary which he was receiving. Apart, therefore, from the question (which we do not decide) as to the legal effect of the variance, if any, between the pleading and the proof, and giving the plaintiff the benefit of such proof as he made, we think that the conversation relied upon did not rise to the dignity of a contract, and, even if viewed as a contract, it is too vague and indefinite to enforce.

We think the disposition made by the learned trial judge in dismissing the complaint was right, and that the judgment appealed from should be affirmed, with costs. All concur; HATCH, J., in result.