(101 App. Div. 494.)

## MACKINTOSH v. KIMBALL et al.

(Supreme Court, Appellate Division, First Department. February 17, 1905.)

1. MASTER AND SERVANT—SALARY—INCREASE—CONTRACTS—QUANTUM MERUIT —EVIDENCE.

Plaintiff, employed by a firm of architects, requested an increase of salary; whereupon one partner promised an interest in the profits of certain buildings defendants were then erecting, and that the amount would be "satisfactory." Nothing further was said, and plaintiff continued in his position for over two years, at the same salary. *Held* not to show a contract for increased compensation, upon which an enforceable promise could be inferred that what plaintiff would receive would be based on a quantum meruit.

2. SAME—EVIDENCE—DECLARATIONS OF PARTNER AFTER DISSOLUTION OF FIRM —ADMISSIBILITY.

In an action against a firm on an alleged contract for an increase of salary, admissions or declarations of one partner, made after the dissolution of the firm, *held* incompetent to bind his copartners.

Appeal from Trial Term, New York County.

Action by Alexander Mackintosh against Francis H. Kimball and another. From a judgment for plaintiff, and from an order denying defendants' motion for a new trial, they appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John S. Davenport, for appellants.
Frederic R. Kellogg, for respondent.

INGRAHAM, J. This is the second action brought to enforce the plaintiff's claim. Upon the first action the complaint was dismissed, which upon an appeal to this court was affirmed (58 App. Div. 25, 68 N. Y. Supp. 492). The plaintiff having testified as to the conversation with one of the defendants upon which he based his claim that a contract was made for compensation in addition to that which he had before received, this court said:

"The most that can be predicated upon such a conversation is that Mr. Kimball was favorably disposed to the consideration of the question of increased salary. But that no definite agreement of any kind was made for an increase of salary for any definite period or any stated amount is evidenced from the plaintiff's own statement at the trial that he was to get a share in the profits of the buildings in addition to his regular salary. He did not claim that he was to be taken in as a partner, but that his additional compensation in some way was to be measured—how does not appear—by the profits realized upon the two buildings. There is not sufficient in this vague and indefinite conversation to support a contract, because there is nothing to show that the minds of the parties met upon any binding agreement."

The plaintiff then commenced this action to recover for the same cause of action. Upon the trial the plaintiff somewhat modified his account of the interview with one of the defendants. He testified that the defendants were copartners, doing business in the city of New York as architects, and that the plaintiff entered their employ in October, 1893, at a salary of $36 per week, receiving additional pay for overtime; that in February, 1895, he had a conversation with the defendants about his compensation, during which he stated that it was his intention

to leave unless they gave him an increase of salary; that Thompson, one of the defendants, said that there was not enough work in the office to warrant giving him any increase; that if any important work came in they would give him a raise in salary; that the plaintiff then stated that if they allowed him the use of the office to start in business for himself he would work on at the same salary; that subsequent to this conversation important work came into the office, and that at the suggestion of one of the defendants he made the designs for a new building, which were accepted; that on October 11, 1896, he had a conversation with Mr. Kimball, one of the defendants, at which he reminded the defendants of the former promise made by the firm to give him a larger salary; that important work had come in the office in the meantime, and that the work of the firm had taken up all his time, and stated that if the defendants did not give him a larger salary he was going to carry out his intentions of starting in business for himself; that Kimball then said that the defendants would make it worth the plaintiff's while if he would stay on; that the plaintiff then made suggestions as to a change in the method of doing business in the office, and that Kimball directed the plaintiff to go ahead and do the business in his own way; that the plaintiff then asked Kimball what they were going to do about his compensation, and Kimball said that the defendant would give him an increase; that the firm could afford then to do so; that his idea was that if the plaintiff stayed on and saw the work of the Altman and Empire buildings through they would give the plaintiff an interest in the profits; that the plaintiff then stated that his former relations with the firm were not altogether satisfactory; that Kimball said that "it was his partner's [Thompson's] fault"; that the plaintiff again asked what would be the amount of increase of his salary, and Kimball said that the plaintiff could rest assured that the amount would be large, because of the enormous cost of those buildings; that the cost of the buildings would amount to several millions, and that the plaintiff could be assured that the compensation would be satisfactory; that the plaintiff then asked how this was to be arranged, and Kimball said, "You can depend upon me; I will see that you get a satisfactory amount;" that after that conversation the plaintiff continued in the employ of the defendants; that the Altman building was completed in 1897, and the Empire building in 1898, the plaintiff receiving during this time his regular salary of $36 per week.

The only distinction between what the plaintiff testified to in the former action and his testimony upon this trial is that he now says that the defendants promised that the increase would be satisfactory to the plaintiff; that when the plaintiff asked Kimball how this was to be arranged so as to be satisfactory to him, Kimball said, "You can depend upon me; I will see that you get a satisfactory amount;" and that the plaintiff said that that was all right; that he would stay on and see the work through. Upon the former trial the plaintiff was examined and cross-examined as to his conversation with Kimball; but several years afterwards he remembered these additional statements, after it had been determined that his former testimony was not sufficient to entitle him to recover. But I do not think that this additional testimony helps the plaintiff. The whole conversation shows that no defi-

nite arrangement was made or intended to be made. All that was promised was that some arrangement in the future would be made which would be satisfactory to the plaintiff, and which would insure to him a larger compensation than he had been receiving from his employers. When Kimball was asked what they were going to do about the question of compensation, he said that his idea was that if the plaintiff stayed on and saw the work upon the Altman and Empire buildings through they would give him an interest in the profits; that plaintiff could judge from that what the cost of these buildings would come to; that it would amount to several millions; that he could be assured that the compensation would be satisfactory; and, when the plaintiff asked how this was to be arranged, Kimball said, "You can depend upon me; I will see that you get a satisfactory amount."

There was here nothing from which a promise could be inferred that what the plaintiff would receive would be based upon a quantum meruit. The defendants proposed in the future to make some agreement which would be satisfactory to the plaintiff; but no basis upon which such increased compensation was to be estimated was suggested, except a general statement that Kimball's idea was that the plaintiff was to be allowed some interest in the profits of the defendants' business. The whole arrangement, as testified to, was so indefinite that it could not be the basis of a recovery. In United Press v. N. Y. Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288, Judge Gray, delivering the opinion of the court, says:

"It is elementary in the law that for the validity of a contract the promise or the agreement of the parties to it must be certain and explicit, and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite."

Meislahn v. Irving Nat. Bank, 62 App. Div. 231, 70 N. Y. Supp. 988, was affirmed upon the distinct ground that, there being no certificate that the case contained all the evidence, the court was bound to presume that sufficient evidence was offered on behalf of the plaintiff to warrant the verdict, and was not at liberty to review the facts. The court was bound to assume that a valid contract had been made. The only question was whether evidence that was received was admissible.

We have not overlooked the distinction pointed out by counsel for the respondent between an action to enforce an executory contract to recover damages for its breach and an action to recover for services rendered under a contract executed by one of the parties to it. The plaintiff was in the employ of defendants, receiving a regular salary, which he continued to receive for the services rendered. If there was proof that an express contract had been made by which he was to receive additional compensation, he would be entitled to it; but it is just here that the plaintiff's proof fails. He continued in the defendant's employ, receiving the salary that had been agreed to. These services were not performed by the plaintiff under a new arrangement by which he was to receive any other or different sum for his services than that provided for by the contract under which he was employed. There is no contract which can be enforced which entitled him to receive anything in addition to that which was paid him and which he received as compensation for his services. If this promise is anything,

it is a promise to give him an interest in the business in the future, and that the arrangement when made would be satisfactory; but as there was no basis upon which the interest that he was to receive could be ascertained and determined, there is no promise that can be enforced.

There is also an exception to a ruling upon a question of evidence which, I think, is clearly error, and which required a reversal of the judgment. The action was brought against the defendants as copartners. The plaintiff continued in the employ of the defendants from the time of his original employment, in 1893, until he was dismissed from his employment, on June 4, 1898, at which time the copartnership between the defendants was dissolved. Mr. Kimball, with whom the plaintiff alleged he had the conversation upon which his claim is based, denied having made any agreement as testified to by the plaintiff, and denied that any promise was ever made to give him a share in the profits of the business. Upon rebuttal the plaintiff was recalled, and testified that he remembered a conversation which took place between himself and a Mr. Beckwith with Kimball about a month after the dissolution of the copartnership. The plaintiff was then asked to detail that conversation. This was objected to upon the ground that it was incompetent, irrelevant, and immaterial, and not binding on the defendant Thompson; upon the further ground that Thompson was not present, and the partnership had then been dissolved, and that nothing then said by Kimball could make a contract; that when Kimball was upon the stand his attention was not called to this conversation, and he was not asked anything concerning it. The court held that the plaintiff would have the right to give it as original evidence against Kimball, and therefore overruled the objection, and the defendants excepted. Mr. Beckwith was also called as a witness, and testified to that conversation, his testimony also being objected to, and the objection overruled, to which the defendants excepted. These witnesses testified that Kimball had then said that they had promised the plaintiff extra compensation for work on the Altman and Empire buildings. The action being against the defendants as copartners, the obligation was a joint one. After the dissolution of the firm no admissions or declarations of one member of the firm were competent to bind his copartners. As this was not a several liability, an admission by one defendant could not be received as evidence against himself and not as against the other defendants, as there could be no several recovery. In Nichols v. White, 85 N. Y. 531, the rule is stated:

"The declarations of one partner, after the dissolution of a firm, not made in the business of winding up, and not connected with any transaction or dealing connected with the dissolution of the partnership, are inadmissible against his copartner. He may bind himself by his admissions, but as to his former partners his agency, except for special purposes, is terminated by the dissolution, and his admissions are like those of a stranger, and they are not bound by them."

Counsel for the plaintiff has adopted a most unusual method of printing in his brief what was evidently a private letter of one of the judges of the Court of Appeals refusing an application to allow an appeal from a judgment in the former action to that court. We are certainly not justified in accepting this letter as a statement of the views

of the court upon the right of the plaintiff to recover. The statement
in this letter was based upon the former record, and, while there is noth-
ing in the letter to indicate that the plaintiff would be entitled to recover
upon this record, we call attention to it merely to express disapproval
of an attempt to use what was evidently a private letter of the learned
judge of the Court of Appeals as an authority to influence the decision
of this court.

It follows that the judgment and order appealed from must be re-
versed, and a new trial ordered, with costs to the appellants to abide the
event. All concur; HATCH, J., on second ground.