NICHOLAS SAINDERICHIN, Respondent, *v.* LEONIDE GABRILOVITCH, Appellant.

First Department, June 22, 1948.

*Walter M. Hinkle* of counsel (*Irving I. Goldsmith* with him on the brief; *Hardin, Hess & Eder,* attorneys), for appellant.

*Milford D. Gerton* for respondent.

DORE, J. The issue is whether Special Term properly directed defendant to account to plaintiff for plaintiff's alleged interest in sums of money defendant received under a contract with a third party respecting defendant's inventions.

Defendant is an inventor who has specialized in the development of technical electrical devices relating to transmission of sound waves. After years of experimental work in Europe, defendant came to the United States in June, 1942. On April 17, 1942, in France a tripartite agreement was signed by defendant, plaintiff, and one Katz. Under its terms, after certain required deductions, plaintiff was to receive a one-third interest in the "net gain" from the exploitation of certain of defendant's patents and inventions.

Through the procurement of Katz, one of the parties to that contract, defendant made a contract with American Armament Corporation on June 1, 1943, which continued for eleven months during which period defendant was paid by American Armament $43,000. Thereupon the relation between defendant and Armament was formally terminated by a cancellation agreement on April 27, 1945, under the terms of which defendant was obligated to repay to Armament all salary he had received and all other costs and expenses in connection with development and attempted exploitation of the inventions totalling $56,764.22.

The trial court in its opinion held that under the tripartite contract plaintiff had an interest in "royalties" received by defendant totalling $43,000 for which the latter must account and overruled defendant's contention that plaintiff had not performed by stating that plaintiff was " to endeavor to secure financial assistance " and that at least on one occasion he made such endeavor.

The trial court inadvertently stated that the Armament contract under which the $43,000 was paid was dated January 1, 1943; and the court held that plaintiff was excused by inability to get into contact with defendant while defendant was profiting

from the Armament venture. But the Armament contract did not come into being on January 1st but on June 1, 1943. Plaintiff admits that no efforts were made by him to get financial assistance after January, 1943, because, as he claimed, defendant told him he had gone into an agreement. The record is clear that no agreement was made in January, 1943. The agreement referred to was a proposed agreement that never materialized, not the Armament contract, which was not made until June, 1943. The record shows that plaintiff failed to perform. The agreement did not obligate plaintiff '' to endeavor '' to secure financial assistance but '' to attract capital and operation funds ''. There is no claim even that plaintiff ever procured any such funds.

But that is not all. On this record the moneys received by defendant from American Armament Corporation under his contract with that company were not '' royalties '' but compensation paid to defendant for technical and engineering services in connection with the effort to exploit certain of defendant's inventions and patented devices. Royalties are the share of the profit reserved to an owner or inventor for permitting another to use his property. There can be no royalties as such unless the inventions are actually commercially exploited. The record shows without contradiction that in spite of the moneys spent by Armament, the patents and inventions in question never reached the stage of commercial exploitation. The inventions were never marketable and never in a position to earn royalties. As a matter of legal definition and as a matter of fact on this record, the compensation received by defendant from Armament was not royalties under any proper interpretation of that phrase.

In addition, the moneys paid to defendant by Armament were treated and characterized in the contract itself as '' salary '' and '' compensation for the services to be rendered '' by defendant and were so entered in Armament's books. The sums were paid regularly on a monthly basis and had no relation to actual commercial exploitation of the devices on which experimental work was being done.

The amounts advanced by Armament by way of salary to defendant and expenses were under the contract with Armament deemed advances against royalties to be subsequently repaid. They constitute salary payments to defendant for research work upon uncompleted inventions and became an obligation which defendant was required to repay. Accordingly, they were all expenditures in efforts to make the inventions marketable.

Under the tripartite contract in suit, such sums must be deducted under any circumstances before free moneys arise as " net gain " which alone is the basis for the one-third division agreed upon. By the judgment appealed from, defendant has been obligated to pay plaintiff moneys that he is also obligated to return to the Armament corporation.

" Advances against royalties " are not royalties. As the very term indicates, such payments are anticipatory financial assistance advanced in an effort to develop the patents so that they would ultimately become commercially exploitable.

The payments to Katz and the litigation with him do not justify plaintiff's claims. Defendant paid Katz substantial sums totalling about $13,800 and also made payments to two others who worked with Katz. But the record shows that Katz performed on his part because he did procure financial assistance through helping to procure the Armament contract. Plaintiff had nothing to do with such procurement.

Under the cancellation contract, defendant is obligated to repay Armament approximately $56,000; this interlocutory judgment compels him in addition to pay plaintiff, who failed to procure any financial assistance whatever, additional substantial sums after an accounting. If this judgment be affirmed, the net result is that defendant inventor and owner of the patents will be compelled to pay well over 100% of anything that he has received.

The judgment should be reversed on the law and the facts, with costs to the appellant and the complaint dismissed, with costs.

PECK, P. J., COHN, CALLAHAN and SHIENTAG, JJ., concur.

Judgment unanimously reversed, with costs to the appellant and the complaint dismissed, with costs. Settle order on notice.