Frank Del Vecchio, J.
This is an action to recover compensation for services alleged to have been rendered by plaintiff prior and incidental to the merger of the corporate defendants.
The complaint alleges seven causes of action asking for various forms of relief all incidental to and arising out of conversations between the plaintiff Towers and the defendant Doroshaw.
As to the status of the parties at the times here in question: plaintiff Albert Towers was an industrial engineer and sales counsel, with his place of business at Seneca Falls, New York. Defendant Jennis Doroshaw was engaged in the investment business and was active in all of the defendant corporations *243 with the exception of Thompson-Starrett Company, Inc. Doroshaw Corporation and E. & S. New York Securities Corporation (defendants) are the former and present names of a single enterprise of which Jennis Doroshaw was president and director and with his wife owned the controlling interest. Defendant Delaware Eoberts & Schaefer Company was a corporation of which Jennis Doroshaw was president and director, the stock in which was under option held by E. & S. New York Securities Corporation. Defendant Eoberts & Schaefer Company was an Illinois building and construction firm, the stock in which was wholly owned by defendant Delaware Eoberts & Schaefer Company. Defendant Julius E. Van Eaalte was president and chairman of the board of defendant Thompson-Starrett Company, Inc., which corporation commenced a series of mergers in October, 1954 resulting in its ultimate consolidation with each of the other corporate defendants.
The sole issue presented is whether plaintiff Albert Towers performed any services prior to the mergers which entitled him to compensation from one or more of the defendants. Plaintiff admitted on examination that he never met any officer or director of defendants Doroshaw Corporation, B. & S. New York Securities Corporation, Eoberts & Schaefer Company or Delaware Eoberts & Schaefer Company other than the individual defendant Jennis Doroshaw. Nor has he offered a written contract as the basis for this action. It is his claim that certain conduct of himself and Doroshaw commencing May 16, 1953 has created in him a right to recover a portion of the benefits accruing from the corporate mergers, on the theory of oral contract, quantum meruit, or trusteeship ex maleficio.
The question which is critical to this litigation is what transpired between Towers and Doroshaw at meetings between them in May, 1953. The testimony of both parties establishes that they met for the first time at the latter’s room in Hotel Syracuse on May 16,1953, the defendant Doroshaw having come to Syracuse to investigate one or more local businesses, including the Hanson Clutch Company, with a view toward possible acquisition by him. The meeting between the parties resulted from the suggestion of one Norman Williams, a mutual acquaintance and business consultant, who had described plaintiff to Doroshaw as a business broker with whom the latter might find something in common. After general discussion of Doroshaw’s activities and of his possible interest in Hanson Clutch, he informed plaintiff that he had recently acquired Eoberts & Schaefer Company, a building and construction business. The participants give different versions of what occurred thereafter.
*244 According to plaintiff: Doroshaw stated that the company last mentioned had a large profit bnt a bad tax base, whereupon plaintiff suggested that Doroshaw acquire a business also in the construction field having a loss carry-over and a favorable tax base. In response to Doroshaw’s question where such a firm could be found, plaintiff stated that he knew of such a concern and in fact had been negotiating for its acquisition by another corporation in which he was interested. Doroshaw then stated that he “ would like to hear more ”, to which plaintiff responded that he would be glad to give information but that he wanted to be compensated either by going in on the deal or by payment from the individual defendant. Doroshaw replied that if the thing were of interest and he went ahead he would take care of plaintiff so that he would be satisfied but that he could not make any arrangements then as to compensation or whether plaintiff would be taken in because he did not know the name of the company and did not know whether the thing was “ doable ”. Plaintiff said that he would take Doroshaw’s word and would disclose in confidence the name of the corporation, and Doroshaw stated that he would hold it in the strictest confidence. Nothing further was said with regard to plaintiff’s compensation nor did he specify that he was a ‘ ‘ finder ’ ’ or that he expected a finder’s fee. Upon being told that defendant Thompson-Starrett Co., Inc., was the firm to which plaintiff had referred, Doroshaw said that the name had never been submitted to him before and, after learning of its loss carry-over, requested plaintiff to furnish him with statements and material about Thompson-Starrett which plaintiff had acquired in the course of his previous negotiations with the firm. Plaintiff promised to do so and to meet Doroshaw in the latter’s New York office on the following Tuesday, May 19.
On that date plaintiff appeared at defendant’s office and gave the latter recently published' balance sheets of ThompsonStarrett along with memoranda and other data which he had on the company. Then followed a discussion of the financial statements and of certain changes in the Thompson-Starrett operation which plaintiff and his associates deemed advisable. The following is plaintiff’s verbatim testimony: “ Doroshaw said, ‘ Now in approaching this thing, I would suggest that you go to the Thompson-Starrett people and say to them that you have someone that you thought might be interested in the situation, providing a deal on the proper basis could be worked out ’, so that the invitation for the approach would run from ThompsonStarrett to Doroshaw, instead of from Doroshaw to ThompsonStarrett, and I agreed with him that that was a good way of *245 approaching the situation, and I told him that I would proceed to see what could be done, and that is about all that happened at that meeting. ’ ’
Plaintiff stated that he had “ an impression ” of a third meeting with the individual defendant about a week later but was unable to recollect what occurred at that time. He admitted, however, that, aside from that possible meeting, he never saw Doroshaw personally again.
Plaintiff did testify that there was some correspondence with the individual defendant and identified originals or copies of the letters between the parties which were received in evidence. Since the court regards this correspondence as significant in determining what each had in mind concerning the respective obligations of the parties, it will be briefly summarized at this point: On May 20, 1953 — the day following the parties’ New York meeting — Doroshaw wrote to plaintiff advising that he had gone over the figures in the Hanson matter, in which he was interested, and requested the latter to obtain certain, specific additional information relative thereto.
On May 22 plaintiff wrote Doroshaw that he had been unable to “ get back ” to him the previous day, enclosed data on Hanson Clutch and advised that he was obtaining the requested information thereon. The letter contained the following paragraphs :
“ I also wish to confirm to you, as I reported to you in our telephone conversation, that I have instituted negotiations with respect to the Thompson-Starrett matter, as per your request, and have followed the suggestions made by you, which I think were excellent.
“ I intend to meet with Mr. Carlos Israels (general counsel for Thompson-Starrett) next week when I am in New York, and will report further to you on this matter. ’ ’
This letter was acknowledged by Doroshaw on May 26, 1953 with the statement: “ Whenever you can arrange to set up a meeting with the Thompson-Starrett people, I would be delighted to make the appointment convenient to them.” He also indicated that he would no longer be interested in the Hanson matter.
On June 30,1953 plaintiff requested the return of the Hanson data and stated that he had been trying without success to arrange a meeting with a representative of Thompson-Starrett, that he had a tentative appointment for the following week, after which he would contact Doroshaw.
No further contact was made until July 13 when plaintiff wrote Doroshaw that he had finally arranged an appointment for that week with the defendant Van Eaalte from Thompson *246 Starrett, when he would set up an appointment for a meeting at which plaintiff, Doroshaw and Van Eaalte might be present. He added, “ I believe that it is best that I meet with him first, in accordance with your suggestion of some time ago. ’ ’
Despite the foregoing, plaintiff admitted that he did not communicate with Doroshaw again until October 28, 1953, when he addressed to him the following significant letter:
“ Dear Jim :
‘ ‘ It has been some time since I was in touch with you last.
“ I finally caught up with Van Eaalte of Thompson-Starrett Co., and after a little conversation, it was plain to see that they have had quite an upheave! in the Corporation, and that a crowd of smart boys in the construction field and in Wall St. have taken over the building, and apparently are going to do something. I therefore stopped all my efforts then and there, as there was no sense in pushing a matter that in my good judgment indicated would get us nowhere.
1 ‘ I have had submitted to me today, a matter that may be of interest to you. * * * (Then followed details of a fabricating and steel construction firm.)
‘1 If this matter is of interest to you, please let me know, as I plan to be in New York next week, and would be very happy to take the matter up with you. ”
(Emphasis supplied.)
After the letter quoted above there was no further communication between the parties with reference to the ThompsonStarrett Co. until April of the succeeding year when plaintiff notified Doroshaw that he had learned of a contemplated merger between Thompson-Starrett and the Doroshaw interests and that both he and the broker Williams would expect compensation from Doroshaw in connection therewith, which claim was promptly denied by the individual defendant.
The circumstances surrounding the merger of ThompsonStarrett and the Doroshaw corporations are contained in the testimony of Doroshaw and the defendant Van Eaalte, president of Thompson-Starrett. There was proof that the board of directors of the corporation last named had been looking for a company with which it might merge since August, 1950. The evidence establishes that the first meeting Doroshaw had with anyone from Thompson-Starrett regarding a merger took place in December, 1953, sometime after plaintiff’s letter of October 28 abandoning any further interest in a Doroshaw-Thompson-Starrett merger. Plaintiff Towers was not present at the con *247 ference in Van Baalte’s office in December, which had been arranged by a director of the corporation who was an associate of a business acquaintance of defendant Doroshaw, and neither he nor Williams was mentioned at that or any of the “ dozens ” of subsequent meetings between Doroshaw and Van Baalte up to the commencement of the litigation.
Defendant Van Baalte stated that he met plaintiff only once and was unable to fix the date of the meeting, which on pretrial examination he described as in the spring of 1953, but on trial he testified occurred about October, 1953. At that time Towers advised him in the course of a brief conversation that he had a number of people interested in merging with Thompson-Starrett and that he would like to bring them together to earn a brokerage fee. Plaintiff did not suggest any prospects by name nor was Doroshaw mentioned by either party. Van Baalte replied that he would be interested in anyone who might interest the stockholders and gave plaintiff copies of recent financial statements of the corporation. He testified that he never saw plaintiff again.
There was introduced in evidence some brief correspondence between Towers and Van Baalte dated July, 1953 suggesting a possible meeting between the two. Plaintiff himself testified however that nothing resulted from the letters and that he met Van Baalte on only one occasion — in February, 1954. (This testimony should perhaps be contrasted with his statement in the letter of October, 1953 that he had ‘ ‘ finally caught up with Van Baalte”, indicating an earlier date for the meeting. As indicated above, the witness Van Baalte was somewhat confused as to the time when he met with Towers. Both testified however that only one meeting took place and, accepting plaintiff’s testimony as true, that occasion occurred in February, 1954.)
According to plaintiff, he advised Van Baalte that he had two people who might be interested in merging with ThompsonStarrett, one the defendant Jennis Doroshaw and the other a Chicago attorney named Pritzker. Van Baalte replied that he had tried unsuccessfully some years before to make an arrangement with Pritzker and that Doroshaw had already been 1 ‘ brought in by somebody ” to see Van Baalte, whereupon plaintiff said: “ You go right ahead with him, because he is my party and Mr. Pritzker is my party.” Nothing further was . said concerning Doroshaw. Towers and Van Baalte continued to discuss Pritzker and the possibility of a merger with his interests. After receiving some late financial data about Thomp- . son-Starrett, plaintiff stated that he would go to Chicago to talk with Pritzker then telephone Van Baalte and arrange a *248 meeting later in the week. Plaintiff estimated that the entire conversation lasted about 30 minutes.
The record contains a letter to Van Raalte dated February 2, 1954 in which plaintiff advised that he had discussed the matter with Pritzker by telephone, forwarding to him the ThompsonStarrett material, and that he would keep Van Raalte informed.
Plaintiff never again contacted either Van Raalte or the individual defendant with regard to a consolidation of the Doroshaw and Thompson-Starrett interests until the Spring of 1954 when he learned of the planned merger and made his demand for compensation in connection therewith.
The complaint by which this litigation was commenced is extensive, occupying some 20 pages, and attempts to allege seven causes of action, some of which differ in substance only slightly from others which are pleaded. Briefly, the first three causes of action — which are against defendant Jennis Doroshaw and the Doroshaw interests — are based on an express agreement to pay plaintiff for services or ideas allegedly furnished by him; the fourth cause of action alleges a wrongful appropriation of plaintiff’s ideas and plans by the same defendants making them trustees ex maleficio; the fifth cause of action, also against the same defendants, seeks a recovery in quantum meruit for services and ideas allegedly furnished by plaintiff and utilized by the Doroshaw interests in the merger with Thompson-Starrett; the sixth cause of action, against defendants Van Raalte and Thompson-Starrett alone, alleges a conspiracy to defraud plaintiff of his interests in the ideas incidental to the merger, and the seventh cause of action, against all defendants, asserts unjust enrichment and conspiracy by the named defendants.
After considering all the competent evidence — including that summarized above which is most favorable to plaintiff — this court is of the opinion that there is no liability upon any of the defendants named in this action.
With regard to the causes of action based on an oral contract, before plaintiff may enforce any obligation he must meet the burden of establishing the existence and terms of the agreement giving rise thereto. (Lehman v. Gross, 118 Misc. 262, 264.)
In effect, plaintiff now claims he is entitled to a “ finder’s fee ” because he was required only to bring to Doroshaw’s attention a corporation suitable for merger with Roberts & Schaefer Company to the tax advantage of the latter.
In an ordinary sense a finder’s fee is paid to a person who brings a deal to another. In plaintiff’s view a finder is also entitled to a fee for the revelation of a business opportunity. Black’s Law Dictionary (4th ed.) defines a finder’s fee as “ a *249 sum of money paid by a banker to one who brings to him a deal out of which he makes money.” (See, also, Cray, McFawn & Co. v. Hegarty, Conroy & Co., 27 F. Supp. 93, 97.)
In denying plaintiff’s right to recover on this theory, the court does not consider the question briefed at length by plaintiff whether, upon satisfactory proof of a promise so made, a party might be held liable to pay for the mere mention to him of a corporation or firm with which he might subsequently do business. It might be pointed out however that Blair & Co. v. Weininger (155 N. Y. S. 2d 203) relied on by plaintiff, is not authority for such a proposition involving as it did additional services by the finder contributing to the ultimate arrangement. (See, also, Knauss v. Krueger Brewery Co., 142 N. Y. 70.) In no case cited by the plaintiff has there been enforced an obligation to pay compensation to a “ finder ” for the disclosure of a name alone, without an introduction or negotiations leading to an eventual transaction between the defendant and the concern suggested by the plaintiff. Certainly, when such an agreement is not reduced to writing, the plaintiff must sustain his burden of establishing the contract by evidence of a quality and quantity sufficient to satisfy the court of a clear and unequivocal intention by the defendant to pay for the mere disclosure. Upon the record in the case under consideration, plaintiff has failed so to do.
Disregarding, for the moment, the nature of the services which the parties may have expected to be rendered by plaintiff, there is serious question whether the rather nebulous statements made by defendant Doroshaw with regard to compensation to plaintiff are sufficiently definite to constitute any contractual offer at all. According to plaintiff’s own testimony upon that subject, defendant Doroshaw stated only that he would “ take care of ” plaintiff ‘ ‘ adequately so that you are satisfied ’ ’, and that he could not “ make any definite arrangements right now as to what your compensation is going to he or tvhether or not we can take you in the deal.” (Emphasis supplied.)
Thus, the amount to which plaintiff might become entitled was left open to future determination. The terms of the promise were so indefinite as to have no legal significance; ‘ ‘ they amount to nothing more than an agreement to make a future agreement; an agreement to agree is not enforcible.” (St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N. Y. 30, 36; Chiapparelli v. Baker, Kellogg & Co., 252 N. Y. 192, 197.) In that circumstance, there could have been no contractual obligation arising from defendant Doroshaw’s statement upon which plaintiff may now recover. (Varney v. Ditmars, 217 N. Y. 223; *250 Mackintosh v. Thompson, 58 App. Div. 25; Mackintosh v. Kimball, 101 App. Div. 494.) In the language of the Court of Appeals, the promise to pay “ is void for indefiniteness ”, and may not be the basis of an award to plaintiff. (Von Reitzenstein v. Tomlinson, 249 N. Y. 60, 67.)
'The question remains whether, absent a specific enforcible promise to pay, plaintiff may nevertheless recover on a quantum meruit basis under the third or fifth causes of action alleged in the complaint. The rule applicable is set forth in Varney v. Ditmars (supra, p. 231) as follows: “ in case one party to an alleged contract has performed in reliance upon the terms thereof, vague, indefinite and uncertain though they are * * * the law will presume a promise to pay the reasonable value of the services.” See, also, Bialostok v. Wolfer (191 Misc. 385, 387): “ The law is well settled that * * * a recovery may be had upon a quantum meruit where the evidence does in fact show the rendition of services under circumstances which imply an agreement to pay therefor. (1 Williston on Contracts [Rev. ed.], § 36; McKeon v. Van Slyck, 223 N. Y. 392, 399; Sturtevant v. Fiss, Doerr & Carroll Horse Co., 173 App. Div. 113.) As was said in Matter of Hughes (229 App. Div. 614, 615, appeal dismissed 254 N. Y. 597): ‘ The question is one of the intention of the parties.’ ” The difficulty in this connection, however, is that the court can find no undertaking or intention to pay for the services actually rendered by the plaintiff.
Plaintiff now claims that at the time of the alleged agreement between himself and Doroshaw on May 16,1953 he intended that he should be paid merely for presenting to Doroshaw the suggestion of a merger with Thompson-Starrett Company. Whether or not plaintiff then so intended, this court is convinced that defendant Doroshaw did not entertain the same view, and absent a mutual understanding by the parties — or, in contractual language, a meeting of the minds — there could of course have been no contract. (Yehle v. New York Central R. R. Co., 267 App. Div. 301, 311, affd. 295 N. Y. 874.) “ A contract assumes an agreement, a meeting of the minds, on a thing to be done.” (Farago v. Burke, 262 N. Y. 229, 232.)
In reviewing the evidence, however, this court is convinced that neither plaintiff nor defendant Doroshaw contemplated that any obligation for payment would come into being without something more than mere disclosure by plaintiff. Specifically, the proof indicates that plaintiff was to take positive action to bring about a merger between Thompson-Starrett Company and Roberts & Schaefer Company. According to his own testimony, it was arranged at the New York meeting of May 19 that he *251 should contact someone at Thompson-Starrett and induce that company to make an overture to the Doroshaw interests suggestive of a merger between the corporations. Plaintiff’s obligation along those lines was recognized by him in the letter to Doroshaw dated May 22, 1953 in which he stated that he had instituted negotiations with someone at Thompson-Starrett in accordance with Doroshaw’s suggestion. Again, by the significant letter dated July 13, 1953 plaintiff made clear the fact that he was contemplating a meeting between Doroshaw, Van Raalte and himself and that he would take immediate steps to bring it about. The correspondence addressed to Thompson-Starrett’s counsel and to its president Van Raalte during July, 1953 reveal that plaintiff did in fact make some attempts at an introduction between Doroshaw and the Thompson-Starrett people. That these efforts were entirely without success is made clear by plaintiff’s testimony indicating that he saw Van Raalte on only one occasion- — -and that not until February, 1954 — which is corroborated by the latter’s statement that he met plaintiff only once.
The evidence relied on by plaintiff to establish defendants’ obligation to pay is by no means clear. The contract must be found in the language of the parties at the meetings had on May 16 and May 19, 1953. -That language fails to define in terms clear and unequivocal the respective obligations of the parties. In that circumstance, we must look to the conduct of the parties to determine their intent. (Woolsey v. Funke, 121 N. Y. 87; Matter of Mencher [Geller & Sons], 276 App. Div. 556.) “ There is no surer way to find out what parties meant than to see what they have done.” (Insurance Co. v. Dutcher, 95 U. S. 269, 273.) Moreover, it is not the personal, or individual, intent of the parties which is important. “It is well-established contract law that in determining whether the parties possessed the necessary intention to contract, an objective test is generally to be applied. That means, simply, that the manifestation of a party’s intention rather than the actual or real intention is ordinarily controlling.” (Matter of Ahern v. South Buffalo Ry Co., 303 N. Y. 545, 560-561.)
Applying these rules to the evidence here presented, this court can reach no other conclusion but that both plaintiff and the defendant Doroshaw anticipated specific action by the former culminating in a merger between two or more of the defendant corporations before he would become entitled to compensation. Prior to the conclusion of the meeting on May 19,1953 Doroshaw had suggested a course of action by which plaintiff might commence negotiations looking toward a merger of the subject cor *252 porations. And, if plaintiff is to be believed, he began activity in that direction within two days after the New York conference with Doroshaw. His failure to accomplish what he set out to do is, in the view of this court, fatal to any claim for compensation based on an express or implied promise to pay by Doroshaw.
Neither is plaintiff entitled to recovery on quantum meruit as pleaded in the fifth cause of action stated in the complaint, wherein he seeks the reasonable value of services allegedly rendered “ between the 16th day of May, 1953, and the 27th day of April, 1954, at the special instance and request of the individual defendant, Jennis M. Doroshaw, and the corporate defendants aforesaid ” which were “ accepted ” and “ utilized in connection with the proposed merger with Thompson-Starrett Company, Inc.”
An action in quantum meruit is appropriate when, by reason of some independent agency or conduct on the part of the defendant, complete performance under a contract is rendered impossible. (Toher v. Schaefer, 45 Misc. 618.) It is not available to one who —like the plaintiff here — undertakes unsuccessfully to act as an intermediary or broker in bringing about a transaction. (Brown v. Snyder, 57 App. Div. 413.) In the oft-quoted language of Judge Finch, writing for the Court of Appeals in Sibbald v. Bethlehem Iron Co. (83 N. Y. 378, 383): “ a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal.” See, also, Barney’s Clothes, v. W. B. O. Broadcasting Corp. (165 Misc. 532, 533, affd. 253 App. Div. 889): ‘4 It is well recognized that to recover on an entire contract the party must show full performance on his part or some valid excuse which would relieve him. No recovery is ever allowed for a part performance unless full performance is excused. (Smith v. Brady, 17 N. Y. 173,187; Catlin v. Tobias, 26 id. 217.) And where work is done and materials furnished, the defendant may enjoy its benefits and not pay for them where there has not been full performance on the part of *253 the plaintiff. (Smith v. Brady, supra; Walker v. Millard, 29 N. Y. 375; Lawson v. Hogan, 93 id. 39; Steward v. Newberry, 220 id. 379, 384; Steel Storage & E. Const. Co. v. Stock, 225 id. 173.)
Furthermore, it may be noted that the cause of action in question pleads services rendered “ between the 16th day of May, 1953, and the 27th day of April, 1954.” There is no proof however that any services — in the strict sense of the word — rendered by plaintiff resulted in any benefit to or were utilized by the defendants. In fact, the evidence is to the contrary — that plaintiff did not even succeed in bringing about a meeting between the Doroshaw and Thompson-Starrett interests.
If the demand be regarded as one for the “ idea ” of merger allegedly disclosed by plaintiff, recovery must also be denied. Concluding, as it does, that plaintiff has failed to establish any promise by defendant Doroshaw to pay for the revelation of a plan alone, the court regards any disclosure as gratuitous for which no compensation is due. Such a disclosure “ unprotected by contract, does not create an enforcible contract implied in law.” (Grombach Prods, v. Waring, 293 N. Y. 609, 616; Bristol v. Equitable Life Assur. Soc., 132 N. Y. 264, 267; Williamson v. New York Central R. R. Co., 258 App. Div. 226.)
What has been said above applies as well to the fourth cause of action alleged in the complaint wherein it is asserted that defendants became trustees ex malificio as a result of the wrongful appropriation of plaintiff’s ideas, methods, etc. Since plaintiff did not protect his ideas by express agreement before disclosure, he may not now claim payment for the use, if any, to which his plans were put. In essence, the cause of action is substantially identical to that pleaded in Stone v. Liggett & Myers Tobacco Co. (260 App. Div. 450) and, on the proof which has been offered, will not justify an award in plaintiff’s favor.
Quite apart from what has been said, there is a further consideration which absolves defendants from any liability for the use — if such there was — of plaintiff’s idea for a merger between Roberts & Schaefer Company and Thompson-Starrett Company. That is, plaintiff’s abandonment in October, 1953 of any interest which he may have claimed prior to that time in a merger of the Doroshaw and Thompson-Starrett groups. Assuming for the moment that plaintiff has acquired a protected property right in the merger idea as a result of the conversations with Doroshaw in May, 1953, his letter dated October 28, 1953 evidences his complete abandonment of any further interest in the proposal. This conclusion is supported by the fact that, *254 from that time forward, plaintiff apparently ceased all efforts either with Doroshaw or Thompson-Starrett to bring about a merger.
Upon that state of the record, this court is of the opinion that plaintiff’s ideas became a part of the public domain after his relinquishment in October, 1953 and that the defendants or any of them were free to make whatever use of them might seem advisable. Certainly, it could not be argued that his property right, if such there was, continued forever, and there could be no more effective termination thereof than his own voluntary abandonment as set forth in the letter referred to above. Plaintiff has failed to offer proof of any activity, by Doroshaw previous to that time which was directed toward an arrangement with Thompson-Starrett. So far as appears from the evidence, Doroshaw did not have any contact with Van Raalte or anyone else connected with Thompson-Starrett prior to October, 1953.
Plaintiff may assert that his mention of Doroshaw at his first meeting with Van Raalte in February, 1954 establishes his continued interest in a merger among the defendants. It may be noted that his testimony in this respect is contradicted by that of Van Raalte, who fixed the date of the meeting variously in the spring of 1953 or in October of that same year and who stated that the name of Doroshaw was never mentioned or communicated to him by plaintiff. Other evidence may be found in the record to support both plaintiff’s testimony fixing the meeting time as February, 1954 and Van Raalte’s claim that it occurred in the spring or October of the prior year. In the view of this court, however, it makes no difference, so far as plaintiff’s case is concerned, which witness is believed as to the time and substance of the meeting. If, as Van Raalte stated in his examination before trial, the occasion took place in the <> spring of 1953, it occurred before plaintiff had even met Doroshaw and, there being only one meeting between Towers and Van Raalte, plaintiff could never have made any contact with the Thompson-Starrett interests on behalf of Doroshaw. If, as Van Raalte testified in the courtroom, the meeting was in October, 1953, then obviously it accomplished nothing for the Doroshaw interests since it was followed almost immediately by plaintiff’s letter revealing his complete disinterest in and abandonment of any scheme for merging the corporate defendants. It may be noted also that, however indefinite Van Raalte may have been .with regard to the time of the meeting, he stated consistently that plaintiff never suggested or mentioned Doroshaw or any of the Doroshaw interests as merger possibilities for Thompson-Starrett. Finally, even if plaintiff is correct that *255 he met Van Raalte in February, 1954, this court is satisfied that the letter of October 28, 1953 coupled with plaintiff’s conduct thereafter at least up to the alleged meeting clearly establishes that he had failed in and expressly abandoned any effort to bring about an introduction to or negotiation with ThompsonStarrett, which is not rebutted by the brief mention of Doroshaw, if it occurred, at the meeting. It is also significant that even at that time plaintiff did not seek to further the interest of Doroshaw, but instead endeavored to direct Van Raalte’s attention toward a merger with Chicago interests which he purportedly contacted immediately after the meeting.
Turning now to the sixth and seventh causes of action alleged in the complaint, which are predicated on conspiracy by two or more of the defendants and unjust enrichment to the damage of the plaintiff: The evidence has been detailed at length above; it will be observed that nowhere has plaintiff established any contact between Doroshaw and a representative of ThompsonStarrett prior to the abandonment of October, 1953, or as a result of any effort or activity on his part. There is affirmative proof that the first meeting between the merging interests occurred in December, 1953 through the arrangement of third persons not parties to this action. On the record as a whole, the court is satisfied that plaintiff has failed to establish a conspiracy or unjust enrichment by any of the defendants which would entitle him to a judgment in his favor.
Certain testimony offered by the defendants and taken out of order before plaintiff rested was received over objection by the plaintiff and subject to a motion to strike out. The testimony consisted of conversations by the witnesses not in the presence of the plaintiff bearing on the causes of action alleging conspiracy. Since the court has determined that the plaintiff’s proof failed to establish prima facie a conspiracy, the objections should have been sustained and the motions to strike out such testimony are granted.
After seeing and hearing the witnesses, reading the correspondence between plaintiff and the defendants Doroshaw and Van Raalte and considering all the other competent evidence, this court has concluded that plaintiff did not expect to be paid and defendant Doroshaw did not expect to pay for the mere disclosure of a suggestion for a merger with ThompsonStarrett Company; that the plaintiff did not have any protected property right in the idea of merging defendant corporations but that, if he did have any such right, it was voluntarily abandoned on October 28, 1953 before any communication between the corporate defendants or their representatives; that *256 there was no conspiracy by any of the defendants and that they did not unjustly deprive him of any property; that the defendant Doroshaw did not contact Thompson-Starrett nor was the merger effected among the corporate defendants as the result of any fraud or deception or the breach of any confidence or violation of any fiduciary relationship with plaintiff.
Plaintiff having failed to establish any of the causes of action alleged, the motions to dismiss the complaint is granted.
This shall constitute the decision in this case and no findings of fact need be submitted. Prepare order accordingly.