Paul F. **BEVELHEIMER**, Plaintiff-Appellant,

v.

**SLICK AIRWAYS, INC.,** Defendant-Appellee.

No. 241, Docket 27060.

United States Court of Appeals Second Circuit.

Argued Feb. 19, 1962.

Decided May 17, 1962.

Leslie W. Gallt, New York City, for plaintiff-appellant.

James V. Ryan, New York City (Lundgren, Lincoln & McDaniel, New York City, on the brief), for defendant-appellee.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Plaintiff appeals from an adverse judgment dismissing his complaint. The action sought damages from defendant for breach of an alleged joint venture agreement. Jurisdiction was based on diversity of citizenship, the trial being before Judge Sugarman of the District Court for the Southern District of New York sitting without a jury. We affirm.

Plaintiff Bevelheimer, at the pertinent times a broker and Vice-President of an engineering company, testified that one Rentzel, Chairman of the Board of Directors of defendant Slick Airways, Inc., was very anxious to obtain air freight business for Slick in connection with the construction of the Dewline (Distant Early Warning System) by the United States Air Force. According to plaintiff's testimony, Rentzel told plaintiff in the Fall of 1955 that if he put him in touch with the people who could let such contracts, Slick would share the actual net profits with him, Bevelheimer, on a 50-50 basis and would treat it as a joint venture. Bevelheimer then told Rentzel that one Hamerskol, an associate of plaintiff's, had the right contacts and requested that Rentzel put the proposition in writing. On November 29, 1955, Rentzel sent plaintiff the following letter:

"Dear Paul:

"Attached is my personal check for $1,000.00, which is to cover expenses incurred by Aero Electronics Associates, you and Alec Hamerskol in connection with the Canadian 'Dewline' movement, which we understand is to begin December 15, 1955.

"This letter and the enclosed check is in accordance with our telephone conversation which we understand to be as follows:

"1. Your group will use its best offices to obtain a satisfactory understanding with those controlling the 'Dewline' movement in which Slick Airways would participate to the extent of approximately one-third of the eastern area movement.

"2. If we are able to successfully negotiate an understanding with those controlling or operating the 'Dewline' movement, based on the extent of potential profits to Slick Airways, Slick will reimburse your group in proportion to the potential return to Slick.

"3. If we are unable to reach a satisfactory conclusion to participate in this movement, I would be entitled to receive from you one-half of the $1,000.00 which I have personally advanced against expenses which you and your associates may incur—or have incurred—and this would terminate any agreement or understanding between either me or Slick Airways and your group.

"I sincerely hope we can work out something that can be beneficial to Slick Airways—and you may be sure we will do what is fair in accordance with the above understanding.

"Sincerely yours,

/s/ D. W. Rentzel

D. W. Rentzel

Chairman"

Although he realized at the time the letter was not an accurate reflection of his understanding of the agreement, either as to performance or amount of compensation, Bevelheimer did not bring it to Rentzel's attention. Plaintiff testified, however, that Rentzel repeated his joint venture offer for being "put in touch" in later conversations. Hamerskol was unsuccessful, and Bevelheimer became associated with one McDaniel. McDaniel believed two contacts of his, a Mrs. Cresswell and a Mr. Benton, might be able to help Rentzel. They insisted, however, that Rentzel writ a letter expressing his interest. On December 14, 1955, Rentzel sent the following letter to McDaniel:

"Dear Tom:

"Slick Airways, Inc. is very much interested in participating in the 'Dewline' lift requirements. We have DC–6A, C–54 and C–46 aircraft, which could be made available for this purpose.

"I would like very much for you and my good friend, Paul Bevelheimer to do whatever you can to assist us in this regard, and, of course, I regret extremely that Paul became innocently involved with Alex Hamerskol. I don't know Mr. Hamerskol but I do know that Paul Bevelheimer is a gentleman and a man of honor.

"I hope you and Paul can put us in touch with the proper people to give us the opportunity to negotiate for participation in this lift. Slick's reputation is well enough known I am sure, to guarantee that we can satisfy any reasonable requirement for cargo lift to any point in the world.

"Sincerely yours,

D. W. RENTZEL (Signed by
J. Murphy)
D. W. Rentzel
Chairman
(Above dictated by Mr. Rentzel but not read. J. M. Murphy, Secy.)"

On December 19, 1955, Bevelheimer passed this letter along to Mrs. Cresswell with the following letter of his own:

"Aircraft Purchasing and Service Company
75 West Street
New York 6, N. Y.

"Att: Mrs. E. C. Cresswell

"Dear Mrs. Cresswell:

"Relative to our various conversations regarding the 'Dewline' lift operations, we are enclosing a photostatic copy of a letter from Mr. D. W. Rentzel of the Slick Airways, Inc. expressing his interest in participating in the 'Dewline' operations.

"Anything that you may be able to do, or do through your attorney, Mr. Benton, that will enable Mr. Rentzel to participate in this operation will be greatly appreciated.

"He has also advised us that he is willing to pay a fee should he get this contract.

"Thank you for your cooperation in this matter.

"Very truly yours,

BUTLER ENGINEERING ASSOCIATES, INC.

PAUL F. BEVELHEIMER
Vice President."

A meeting was held on December 20, 1955, between Bevelheimer, McDaniel, Cresswell, Benton and Rentzel. Benton represented to Rentzel that he had acquired some knowledge as to Dewline contracts through work for a client. Rentzel asked Benton to do what he could to assist Slick. Benton then left the meeting and called the Western Electric Company, the prime contractor on the Dewline operation. He asked to speak to someone who might inform him as to the status of air freight contracts on the Dewline operation. The call was referred to a Mr. Lohman who told Benton there had been a meeting in Ottawa that day at the Department of Transportation and certain facts as to the commencement of air carriage, tonnage, and destination were known for the first time. He stated

that Western Electric did not control the letting of contracts, that being handled solely in Canada. Lohman advised Benton to get his people to Canada as soon as possible to check on the facts and negotiate the contracts. Benton then conveyed that information to Rentzel. Neither Benton, Mrs. Cresswell, McDaniel, nor Bevelheimer took any further action to aid Slick in its successful obtaining of a Dewline contract. Benton did not know Lohman but merely called Western Electric and asked for somebody to speak to. He had no special influence with Lohman or anyone else at Western Electric, and the information he obtained was concededly public and would have been given to anyone that called. Benton did not mention Slick Airways to Lohman or anyone else connected with the Dewline.

■■ After plaintiff rested, the District Court granted a motion to dismiss under Rule 41(b), F.R.Civ.P., 28 U.S.C.A. Extensive findings of fact and conclusions of law were made. 5 Moore's Federal Practice, 2d Ed. ¶41.13[4]; Huber v. American President Lines, 240 F.2d 778 (2 Cir. 1957). The District Judge disbelieved plaintiff's testimony regarding conversations with Rentzel as to the amount of compensation and found the sole request for services by Slick was that contained in the letter of November 29, 1955. He denied relief, therefore, on the alternative grounds that the alleged contract was too vague and indefinite as to the amount of compensation to justify legal enforceability and that, in any event, plaintiff was not the effective or procuring cause of defendant's obtaining the contract. On this appeal, plaintiff contends the performance requested by Rentzel can be determined only by reading the November 29 and December 14 letters together and asks the Court to upset the credibility findings as to the amount of compensation. We affirm on the sole ground that plaintiff did not render the requisite performance and is, therefore, not entitled to relief.

It is elementary that recovery upon a contractual theory such as is advanced here, whether it be on a promise to pay a specific sum or on a *quantum meruit* basis, requires a showing that the necessary services have been performed. Sainderichin v. Gabrilovitch, 274 App.Div. 100, 79 N.Y.S.2d 726 (1st Dept. 1948); Towers v. Doroshaw, 5 Misc.2d 241, 159 N.Y.S.2d 367 (2d Dept. 1957). Plaintiff failed to make such a showing. Even when the December 14 and November 29 letters are read together, the performance rendered falls short of that requested. Bevelheimer himself testified he believed his obligation was either by himself or through a third party "to make contact with people with whom he [Rentzel] could sit down and negotiate a contract * * *," "to introduce him to the people who could make the contract * * *," or to "open the doors for him to go to those people." Benton's activities fell far short of this. He did not "introduce" Rentzel, "put him in touch," or "open the doors" with the right people. All he did was call Western Electric, obtain admittedly public information as to the contracts, and then tell Rentzel the contracts were being let in Canada. Benton did nothing to aid contact with the "proper people" in Canada, offered no good offices or special means of access, and in fact never even mentioned Slick Airways to anyone connected with the Dewline operation. To be sure, "put in touch" is not the clearest possible request, but we believe the factual context of this case and Bevelheimer's own understanding of the agreement demonstrate that more was required than the negligible performance rendered. Assuming, therefore, plaintiff has managed to avoid the other obvious pitfalls inherent in his case, we hold he did not render the services required for recovery under his version of the alleged contract.

A review of the entire record shows plaintiff had more than a fair opportunity to present his evidence on the issue we deem material to a resolution of this case. We need not, therefore, discuss plaintiff's sweeping attacks on the fair-mindedness of the District Judge and his conduct at the trial.

Affirmed.